**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
**(ALBANY DIVISION)**

| | |
|---|---|
| KYLE BOURGAULT, in his official capacity as Sheriff of Rensselaer County, New York, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KATHY HOCHUL, in her official capacity as Governor of the State of New York, *et al.*,<br><br>Defendants. | Civil Action No. ____________<br><br>Related Cases:<br>No. 1:26-cv-1360 (MAD/ML);<br>No. 1:26-cv-1281 (MAD/ML) |

**DECLARATION OF SHERIFF PATRICK R. ENGLE**

Pursuant to 28 U.S.C. § 1746, I, Patrick R. Engle, declare as follows:

**Background on My Office and Jurisdiction**

1. I am the Sheriff of St. Lawrence County, New York. I was elected in November 2023 and assumed office in January 2024. I submit this declaration based on my personal knowledge, my review of official records of the St. Lawrence County Sheriff's Office (SLCSO), and information provided to me by my command staff and jail administrators in the ordinary course of our operations.

2. I have spent my adult life in public service. After serving in the United States Marine Corps for several years, I joined the SLCSO in 2001 as a road-patrol deputy. I later served as an investigator. I spent approximately twenty-three years in this Office before the voters elected me Sheriff. I did not come to this office as a politician. I came to it as a deputy who had already worked this County's roads, its river towns, and its jail.

3. The Office of Sheriff is an independently elected constitutional office under Article XIII, Section 13 of the New York Constitution. I do not serve at the pleasure of the Governor, the Attorney General, or the Board of Legislators. I answer to the voters of St. Lawrence County. My oath requires me to support the Constitution of the United States and the Constitution of the State of New York, and to faithfully discharge the duties of Sheriff. Those duties include the safe and lawful operation of the St. Lawrence County Correctional Facility and the protection of the approximately 108,505 residents of this County.

4. St. Lawrence County is the largest county in New York State by land area. It covers approximately 2,680 square miles in New York's North Country. The County includes the

City of Ogdensburg and towns and villages including Canton, Potsdam, Massena, Gouverneur, Norfolk, and other river and border communities. The St. Lawrence River forms a substantial portion of our northern boundary with Canada. The Ogdensburg-Prescott International Bridge is a principal port of entry. The Akwesasne territory, which straddles the international boundary, lies immediately east of the County along the same river corridor. The border is not an abstract concept for this Office; it is an operational fact we contend with every day.

5. SLCSO operates twenty-four hours a day, seven days a week. Our responsibilities include highway patrol, criminal investigations, civil enforcement, and the county jail. The Office is organized into a Civil Division, a Criminal Division, and a Correctional Division. We currently employ approximately 47 sworn deputies, 70 correction officers, and 26 civilian personnel. The Sheriff's Office is located at 48 Court Street, Building 8, Canton, NY. The Correctional Facility is located at 17 Commerce Lane, Canton, NY.

6. The adopted 2026 operating budget for my Office is approximately $16.1 million. That figure is not large for an agency that patrols the State's largest county, staffs a full-service jail, and works a land-and-river international border. Every partnership that supplies training, overtime, equipment, or a service I cannot otherwise provide without raising taxes is a partnership I am obligated to evaluate on the merits.

**The Northern Border and Public-Safety Conditions in This County**

7. St. Lawrence County sits on one of the most active stretches of the northern border. The U.S. Customs and Border Protection's (CBP) Swanton Sector, which includes this portion of New York, has for several years accounted for a large share of illegal crossings from Canada into the United States. Cross-border movement here is not limited to official bridges. It includes the river, remote roadways, and the unique geography of a territory that sits on both sides of the line. Deputies in our border towns regularly deal with trespass complaints, transients passing through rural property, and people who did not enter through a port of entry.

8. I have said publicly, and I reaffirm here, that we have seen an increase in these encounters. The people we come across are on farm lanes, in river towns, and, when they are arrested for local crimes, in our jail. Some are simply passing through. Some are being moved by smuggling organizations that use the St. Lawrence River and the Akwesasne corridor. This Office has worked those cases with our federal and tribal partners. In May 2026, for example, the United States Attorney's Office announced a guilty plea in a human-smuggling conspiracy that used boats to move aliens across the St. Lawrence River and that resulted in the deaths of a family (including two children under the age of three). The Department of Justice (DOJ) identified SLCSO among the agencies that assisted Homeland Security Investigations (HSI) Massena, CBP, the New York State Police, and tribal and Canadian partners in that investigation.

9. I do not claim that every person who crosses the river is a violent criminal. I do claim that a border county cannot do its job if it is forbidden from using the federal tools that exist

for the people who are already in our custody. When someone is arrested in Massena, Ogdensburg, Potsdam, or a river town on a local charge, the first question a jail has to answer is who that person is. The second is whether another jurisdiction (including the United States) wants them before they are released back into the community.

10. This Office works every day with federal agencies on the border mission. We have seven deputies serving as task-force officers with HSI. We work regularly with CBP, the Drug Enforcement Administration (DEA), and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). We have participated for more than fifteen years in Operation Stonegarden, the Department of Homeland Security (DHS) grant program that funds overtime, mileage, and equipment for joint operations along the Canadian border. Those relationships are described more fully below. They matter here because they show that federal-local cooperation in this County is not a new idea.

**The Correctional Facility and Our Current Practice**

11. The St. Lawrence County Correctional Facility is a full-service local jail. Our rated capacity is 186 beds. Our recent average daily population has been approximately 136. We house sentenced and unsentenced local inmates and, as described below, we are authorized to house federal prisoners. Our facility is the only jail in a county the size of some states' entire police jurisdictions. Knowing who is in our custody is an important jail-management function.

12. The jail has been getting fuller. I advised the County's Operations Committee in June 2026 that our average population had increased on the order of 15 to 20 percent from prior years, and I requested additional overtime authority to staff the facility safely. Overtime is a necessary tool in a jail this size. I will never be able to eliminate it. We are already running a busy jail on a tight budget. That is the operational setting in which we have to decide who is in our custody and who should be notified before we release an individual.

13. Our current detainer practice is limited and conservative. When another agency—state or federal—lodges a detainer, we notify that agency of the inmate's scheduled release. If the agency is coming to take custody, we will hold the person for a reasonable period of travel time. We do not hold a person solely on an immigration detainer beyond that. The practice I have described is the same basic courtesy we already extend to every other American jurisdiction that has a warrant for someone in our custody.

14. What we cannot do today is query federal immigration systems at booking and process a removable alien who is already in our custody. We can notify U.S. Immigration and Customs Enforcement (ICE) or HSI that we have someone. We cannot ourselves run the person through those federal systems. That is a screening-and-handoff gap.

15. If a person in our jail has a warrant from Vermont, Ohio, or any other state, we run them, we notify the other jurisdiction, and we do not shrug and release them because it would be inconvenient. A federal immigration warrant is not entitled to less respect than a warrant from a neighboring county. The problem is that, as things stand, we do not have the trained,

on-site ability to treat a federal warrant the same way. I have used this comparison in public before, and it remains the right one.

**Our Existing Federal Partnerships**

16. Our Correctional Facility has housed federal prisoners for many years under Intergovernmental Agreement No. 52-04-0000 with the United States Marshals Service (the "USMS IGA"). The parties have modified the same agreement over a period of years, including a 2020 modification for video-teleconference guard services and later addenda addressing detention standards, medical care, body-worn cameras, and related operational terms.

17. On July 31, 2026, I personally signed a restated USMS IGA for the St. Lawrence County Correctional Facility. A true and correct copy of that agreement is attached hereto as Exhibit A. The agreement became effective August 1, 2026. It is perpetual unless terminated. It authorizes the housing, safekeeping, and care of federal prisoners in our jail, at a per-diem rate of $129.00, with a guard and transportation hourly rate of $46.00. The estimated federal bed allocation is modest: one male bed, one female bed, and a total of three. The agreement can be terminated by either party on thirty days' written notice, with additional time if needed to relocate federal prisoners.

18. Block 19 of the July 31, 2026 USMS IGA expressly lists ICE as an authorized agency user, alongside the U.S. Bureau of Prisons (BOP). The purpose clause states that the agreement allows the USMS "or other authorized agency user as noted in block #19" to house individuals detained on federal charges or federal court orders at our facility. The receiving-and-discharge clause requires us to release federal prisoners only to officers of the authorized agency that committed them—and it names ICE by way of example, together with DEA and the USMS. The billing provisions require us to submit separate monthly invoices to each federal component whose prisoners we house. Those provisions list ICE's Eastern Regional Office in South Burlington, Vermont, as an invoice addressee, along with the USMS Northern District of New York and the Bureau of Prisons.

19. I signed the USMS IGA six weeks ago, after the State had already enacted the statutes at issue in this case. I signed it because the federal government still needs a place to house federal prisoners in this District, because this County has provided that service for years, and because the agreement contemplates ICE as an authorized user of our jail. This is not a revenue play. At $129 a day and three estimated beds, no one balances a $16 million budget on ICE housing. The point is that the United States, including ICE, is contractually authorized to use this jail—and I am contractually obligated to accept and to release federal prisoners according to the terms I signed.

20. Those same federal relationships extend well beyond the jailhouse context. As noted above, seven members of this Office serve as HSI task-force officers. That is a substantial commitment for an office of our size. Task-force officers work federal investigations under federal supervision. They are the opposite of an untrained, unsupervised freelance

immigration unit. They show this Office already works federal investigations under federal supervision.

21. Operation Stonegarden is the other major federal partnership that defines this Office's border work. Stonegarden is a DHS/FEMA grant, administered in New York through the Division of Homeland Security and Emergency Services. It funds overtime, fringe, mileage, and technical equipment for joint operations among federal, state, local, and tribal agencies along the Canadian border. St. Lawrence County has received Stonegarden awards in every fiscal year from at least FY2009 through FY2024. A summary of those awards is attached hereto as Exhibit B.

22. The amounts we receive as part of Stonegarden are not trivial. Recent awards include $400,092 in FY2020, $300,000 in each of FY2021, FY2022, and FY2023, and $290,000 in FY2024. The FY2024 award letter, dated November 1, 2024, from Commissioner Jackie Bray of the Division of Homeland Security and Emergency Services, is included in Exhibit B. The performance period for that award runs from September 1, 2024 through August 31, 2027. A substantial portion of each award is passed through to municipal police departments and state agencies that work the same border—historically including the Ogdensburg, Massena, Potsdam, Canton, and Norfolk police departments and New York State agencies—for overtime, equipment, and mileage. This Office has used Stonegarden support for border patrol operations, including K-9 work. FY2025 funding was pending as of the last internal summary I reviewed.

23. I describe Stonegarden here for two reasons, and I want both to be clear. First, it is evidence of the border mission this Office already performs and of the cost of performing it. Second, the grant exists precisely because we actively work with our federal partners at CBP and HSI along the border. However, a sheriff who is forbidden from cooperating with ICE is not the partner DHS is paying (or ought to pay) for. I return to that funding risk after I describe the state statute that now puts this Office to that choice.

24. St. Lawrence County has also received modest reimbursements under the State Criminal Alien Assistance Program (SCAAP), which DOJ administers. SCAAP offsets a portion of the cost of incarcerating certain undocumented criminal aliens. Our recent awards include $9,544 for FY2020, $4,025 for FY2021, $10,542 for FY2022, $6,882 for FY2023, and $11,407 for FY2024, for a five-year total of $42,400. After application-assistance fees, approximately $33,072 remained to offset jail costs, including body-worn cameras, an e-prescribe module, and a security-system service plan. A summary is attached hereto as Exhibit C.

25. Each SCAAP application requires us to submit a package of information that DHS reviews to determine who is an eligible undocumented criminal alien. That process fully works only if we can identify that population and work with federal immigration authorities. Like Stonegarden, our SCAAP awards are federal money that exists because we cooperate with federal authorities. They confirm that our jail houses the population the program exists to address, and that the federal government has recognized the associated costs.

**The County's Decision to Enter a 287(g) Jail Enforcement Model**

26. Section 287(g) of the Immigration and Nationality Act authorizes DHS to enter into written agreements with state and local law-enforcement agencies under which trained and certified local officers may perform specified federal immigration functions under ICE supervision. ICE administers more than one model. The Jail Enforcement Model is the most limited. It is confined to a jail or correctional facility. It is designed to identify and process removable aliens who are already in local custody on state or local charges.

27. I began evaluating a 287(g) partnership in approximately the middle of 2025. I did so for the reasons discussed above. We arrest people on local charges. Some of those people are not lawfully in the United States. Some of them are wanted by ICE. Under our current practice, we can notify federal partners and hold for a reasonable travel period. We cannot ourselves perform the jail-side identification and processing that a designated 287(g) officer is trained to perform. ICE offered to train our people, to put its systems on our jail computers, and to let us do at the booking counter what we already do with out-of-state warrants. For a county like mine, that is a resource I was obligated to consider. The Jail Enforcement Model was designed to close exactly the screening-and-handoff gap I have described. It would have let trained corrections staff query federal immigration systems at booking, under ICE supervision, on people we had already arrested on local criminal charges. It does not require a new wing, a new tax, or a street-enforcement unit.

28. I was careful about the 287(g) model I advocated for. I did not ask the Board of Legislators for a task-force agreement. I did not ask for authority to serve immigration warrants in the community. I asked for the Jail Enforcement Model. On February 5, 2026, after the Board voted, I explained that the agreement "is just simply letting the federal government come in and put their software programs on our computers, working with our IT department and training our corrections deputies on how to utilize that." I said then: "We've already apprehended these people. They've already been arrested on local criminal charges. Why not run them against a federal database to see if they have a federal warrant for them." I also said I do not understand why anyone would want this Office to "release a criminal that's wanted on a federal warrant back into our communities and lose sight of that person again." I stand by those statements today.

29. My proposal went through the ordinary county process. The Operations Committee considered it on January 12, 2026. The Board of Legislators considered it at a regular meeting on February 2, 2026. Before the vote, the Board heard an extended period of public comment. Approximately 300 hundred residents gathered at the courthouse. Public comment lasted several hours (from approximately 6:00 PM to almost 1:00 AM). Dozens of written communications were read into the record, and the Board had received a large volume of calls and emails. Most of the speakers opposed the agreement. Some of that opposition was based on a misunderstanding that we were seeking street-enforcement authority. Some of it was based on a principled disagreement with any ICE partnership.

30. The Board did not ignore these comments. It amended its authorizing resolution to specify the Jail Enforcement Model, to require that the program be revisited in a year, and to require

that I report regularly to the Board on its operation. Those are accountability conditions that I readily accepted. On that amended resolution, the Board voted 11 to 4 to authorize me to enter a Section 287(g) Model Memorandum of Agreement with ICE. The resolution is Resolution No. 44-2026. A certified copy, attested February 3, 2026, by Deputy Clerk Rebekah K. Zuhlsdorf, is attached hereto as Exhibit D.

31. Resolution 44-2026 states the public-safety basis directly. It recites that Section 287(g) authorizes DHS to delegate federal immigration authority to trained local officers; that this Office intends to enter a Jail Enforcement Model MOA to identify and process non-citizens booked into the Correctional Facility for state or local offenses; that ICE will train approved personnel assigned to the facility; that I will select members with the proper background for that limited function; and that the Board "has reviewed this proposal and finds it to be in the County's interest for public safety." It then authorizes me to sign all documents necessary to execute and implement the agreement upon review and approval by the County Attorney.

32. That is as far as I could go without ICE and without a signed MOA. The voters elected me. The Board authorized the contract. The County Attorney was to review the form. ICE was to train the officers. I was prepared to sign. I have not withdrawn the request. The Board has not rescinded Resolution 44-2026. What happened instead is that the State of New York forbade me to finish the process.

**The "Local Cops, Local Crimes Act"**

33. While this County was considering, authorizing, and preparing to implement a Jail Enforcement Model agreement, the State enacted what it styled as the "Local Cops, Local Crimes Act," now codified at Executive Law § 170-K. Governor Hochul signed the legislation in May 2026. The Act takes aim at the precise partnerships Congress authorized in 8 U.S.C. § 1357(g), and at the use of local jails to house civil immigration detainees.

34. As I understand the statute, the Act prohibits a local government, a law-enforcement agency, a correctional facility, or an agent thereof from entering, modifying, renewing, remaining in, or extending any agreement pursuant to Section 287(g). Effective August 25, 2026, any such agreement that remains is deemed inconsistent with state law and is treated as terminated. After that date, a sheriff who wishes to enter this kind of congressionally authorized agreement is forbidden from doing so. The Act also restricts the use of local correctional facilities to house persons in federal civil immigration custody. Those are the provisions that reach this Office.

35. The provisions Governor Hochul signed into law also created an enforcement bureau to police the Act. Executive Law § 63-E establishes the Office of Immigrant Trust (OIT) in the Department of Law, headed by a person appointed by the Attorney General. Section 63-E empowers OIT to solicit and receive public complaints of § 170-K violations, to investigate those violations on complaint or on its own initiative, to issue subpoenas, to examine and copy records, and to visit and inspect local correctional facilities and speak with people detained there. If OIT finds a violation by a county or a sheriff, it may

commence a civil action for injunctive or declaratory relief, enter into an assurance of discontinuance, or place the municipal government under a period of monitoring.

36. Other New York sheriffs who already had 287(g) agreements have received letters from the Attorney General demanding that they unwind those agreements by August 25, 2026. I have not received such a letter. I attribute that to the fact that this County's MOA was authorized but not yet signed. The absence of a letter, however, is not the absence of a command. The statute itself forbids me to sign a formal partnership with ICE, and OIT has the statutory power to inspect my jail and to sue me if I do.

**What the Act Does to This Office**

37. The Act's first and most direct effect on St. Lawrence County is foreclosure. Resolution 44-2026 is a completed local act. It is the Board's authorization to enter a specific federal contract. The Act makes that authorization unlawful to carry out. I cannot send officers to 287(g) training. I cannot accept ICE systems in the jail for designated-officer use. I cannot sign the MOA the Board told me to sign. On August 3, 2026, at a meeting of the Board of Legislators, I described the practical result in plain language: the agreement is "dead in the water." I said then that the statute "infringes on the autonomy of the sheriff's office." I said I am elected by the people to protect the community, and that I cannot now perform all of the duties I need to perform. I said the legislators should feel the same injury because the Act also impacts their home rule. I was describing what the State had done to a decision this County had already made.

38. I have not abandoned my endorsement of the Jail Enforcement Model. I have not asked the Board to rescind Resolution 44-2026. I have not told ICE that this County is no longer willing to partner with it. I have been stopped by a state statute that declares the agreement I was authorized to sign to be inconsistent with New York law. If this Court enjoins the Act, I am prepared to complete the process the Board approved.

39. The Act's second effect is to put the July 31, 2026 USMS IGA under a legal cloud. That agreement names ICE as an authorized user, requires us to invoice ICE when ICE prisoners are housed, and requires us to release ICE's prisoners only to ICE. The Act forbids the use of a local correctional facility to house federal civil immigration detainees and forbids agreements that carry out that function. I signed the IGA in the ordinary course of keeping a longstanding federal housing relationship in place. I now face a state law that treats a core term of that federal instrument as forbidden. Federal agencies that need beds, including ICE, will reasonably hesitate to use a jail whose sheriff is threatened with investigation for honoring the contract he just signed. That uncertainty is itself an injury.

40. The Act's third effect is to disable the screening function I have described. Without a Jail Enforcement Model, this Office retains the same limited practice we have today: notify and hold for reasonable travel time, with no trained on-site ability to query ICE systems at booking. Simply put: Executive Law § 170-K blinds our jail.

41. The Act's fourth effect is the enforcement threat. Even though I have not received an Attorney General letter, OIT exists to police the prohibition. Section 63-E lets that bureau walk into our Correctional Facility, pull records, interview inmates, and then sue this County or place it under monitoring. If I sign the MOA the Board authorized, I invite that investigation and that lawsuit. If I honor the ICE-user terms of the USMS IGA, I invite the same. If I refuse both, I accept the public-safety, home-rule, and federal-funding consequences described herein. That is not a choice the New York Constitution gives the Attorney General the right to force on me.

42. The Act's fifth effect is to substitute a statewide political judgment for the judgment of the official that the state Constitution and the voters charged with running this jail. The Act also displaces the judgment of the Board of Legislators that authorized the contract after a full public hearing. The irony of this is inescapable. The title of the statute is "Local Cops, Local Crimes," but what it does in this County is the opposite. Local cops and local legislators did their work. Albany then forbade the product of that work because it involved ICE. That is not local control; it is a state veto of a county public-safety decision.

**The Irreparable Harm We Face**

43. The effects I have described here are not injuries that a later damages award can repair. The harm is occurring now, and it will become complete on August 25, 2026, unless the Act is enjoined.

    a. First, foreclosure of the authorized Jail Enforcement Model cannot be undone after the fact. Money damages cannot restore a training pipeline that was never allowed to start, or an MOA that state law will treat as void the moment it is signed. A completed local authorization and an interrupted federal contracting process is not a hypothetical interest in some future program.

    b. Second, the injury to a constitutional office is not compensable. Article XIII, Section 13 does not make me a field office of the Attorney General. If the State is allowed to tell an elected sheriff and the local Board that their judgment is irrelevant, nothing can restore the independence the state Constitution conferred on those public officials.

    c. Third, a blind release of criminal aliens into the community cannot be undone. If a removable criminal alien is released because we could not run him through federal systems, I cannot un-release him. I cannot un-ring that bell in Massena or Ogdensburg or on a township road at 2:00 a.m. For an Office that works an international border, that is not a theoretical harm.

    d. Fourth, the cloud over the USMS IGA is not a paper problem. Once federal partners treat this jail as legally unsafe to use, the relationship does not snap back because a court ultimately says the statute was invalid. Small programs are the easiest to abandon when an OIT investigator is standing in the jailhouse door.

e. Fifth, the August 25 deadline is irreversible. Every booking after the deadline at which this jail is forbidden to run a federal immigration query is a booking we cannot do over.

f. Sixth, compliance with the Act threatens money this County cannot recover later. If federal partners reduce their use of our facility, or if the legal risk of honoring the IGA causes us to decline ICE prisoners the contract otherwise permits, lost per diem falls on St. Lawrence County taxpayers. If we proceed and are investigated by OIT, that cost falls on the same taxpayers. Stonegarden is awarded because this County works with federal border agencies. SCAAP is paid because this jail can identify undocumented criminal aliens and submit that information for DHS review. If we must stop cooperating with ICE to stay on the right side of § 170-K, we put at risk hundreds of thousands of dollars a year in Stonegarden overtime and equipment for this Office and for the municipal departments that receive the pass-through. We also put at risk the recurring SCAAP reimbursements that offset a portion of the cost of housing undocumented criminal aliens. Those dollars, once lost, are not restored by a later judgment.

44. I want to be equally clear about what this case is not. It is not a request for a bounty. ICE does not pay this County a fee for designations, and the SCAAP funding we have received did not buy anyone's vote. This is not a request for street-enforcement authority I never sought. My claim centers on the reality that the Act's effects, described above, are occurring now and cannot be repaired later.

**Conclusion**

45. I took an oath to protect the people of St. Lawrence County. I did not take an oath to accept a state statute that forbids me from executing a contract my Board already approved, that attempts to override a federal housing agreement I signed, and that requires this jail to release people we had a lawful and practical way to identify and to transfer. If the Act is enjoined, I am prepared to execute a Jail Enforcement Model memorandum of agreement with ICE in the form the Board authorized. I will continue to honor the July 31, 2026 USMS IGA, including its terms respecting authorized agency users, unless and until a court of competent jurisdiction orders otherwise.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of August, 2026, in St. Lawrence County, New York.

[signature]

Patrick R. Engle
Sheriff of St. Lawrence County, New York

# Declaration of Sheriff Engle

# Exhibit A

**U.S. Department of Justice**
**United States Marshals Service**
**Prisoner Operations Division**

**Office of Detention Services**
**Intergovernmental Agreement**

| 1. Agreement Number | 2. Effective Date | 3. Facility Code(s) | 4. UEI Number |
|---|---|---|---|
| 52-04-0000 | August 1, 2026 | 7C3 | ECBEXYEC94B5 |

| 5. Issuing Federal Agency | 6. Local Government |
|---|---|
| United States Marshals Service<br>Prisoner Operations Division<br>Office of Detention Services<br>CG-3, 3rd Floor<br>Washington, DC 20530-0001 | Saint Lawrence County Correctional Facility<br>17 Commerce Lane<br>Canton, New York 13617<br><br>Tax ID#:15-6000465 |

| 7. Appropriation Data | 8. Local Contact Person:<br>E-mail:<br><br>Telephone: | Warden, Peggy Harper<br>pharper@stlawco.gov<br>(315) 379-2477 |
|---|---|---|
| 15-1020/XD | | |

| **9. Services** | **10. Estimated Number of Federal Beds** | **11. Per Diem Rate** | **12. Period of Performance** |
|---|---|---|---|
| This agreement is for the housing, safekeeping, subsistence, and care of Federal prisoners, in accordance with content set forth herein. | Male: 2<br>Female: 1<br>Juvenile: N/A<br>**Total: 3** | **$129.00** | Perpetual |

**13. Guard/Transportation Hourly Rate**

Guard/Transportation Hourly Rate: **$46.00**

Mileage shall be reimbursed by the Federal Government at the current General Services Administration (GSA) Federal Travel Regulation Mileage Rate.

**14. Optional Guard/Transportation Services**

☒ Medical Visits

☒ U.S. Courthouse

☒ JPATS

☐ Encompassed ____________

☒ Video Teleconferencing (VTC) Hearings

☒ Hospitalization

☒ Other Jail-to-Jail

**15. Department of Labor Wage Determination**

☐ Wages Incorporated # ____________

☒ Collective Bargaining Agreement # 2026-421, 2026-422

16. Local Government Certification

*To the best of my knowledge and belief, information submitted in support of this agreement is true and correct. This document has been duly authorized by the governing authorities of their applying Department or Agency State or County Government and therefore agree to comply with all provisions set forth herein this document.*

17. Signature of Person Authorized to Sign (Local)

[signature]
Signature

Patrick Engle
Print Name

Sheriff — 07/31/2026
Title — Date

18.Federal Prisoner Type Authorized

☒ Adult Male

☒ Adult Female

☐ Juvenile Male

☐ Juvenile Female

19. Other Authorized Agency User

☒ BOP

☒ ICE

☐ Other ________

20. Signature of Person Authorized to Sign (Federal)

TIFFANI EASON Digitally signed by TIFFANI EASON Date: 2026.08.07 07:49:27 -04'00'
Signature

Tiffani Eason
Print Name

Assistant Chief, Intergovernmental Agreements Branch
Title — Date

**Table of Contents**

Section Description | Page Number

1. Authority ........ 3
2. Purpose ........ 3
3. Administration ........ 3
4. Place of Performance ........ 5
5. Agreements Specialist ........ 5
6. Termination ........ 5
7. Assignment and Outsourcing of Jail Operations ........ 6
8. Medical Services ........ 6
9. Affordable Care Act (ACA) ........ 8
10. Receiving and Discharging of Federal Prisoners ........ 8
11. Prisoner Work Program ........ 8
12. Guard/Transportation Services to/from Medical Facility ........ 9
13. Guard/Transportation Services to/from U.S. Courthouse ........ 10
14. Guard/Transportation Services to Justice Prisoner & Alien Transportation System (JPATS) or Other ........ 10
15. Video Teleconference Hearing within the Facility ........ 11
16. Optional Guard Services to Video Teleconference Hearing within the Facility ........ 11
17. Special Notifications ........ 11
18. Body Worn Camera Information Requests ........ 12
19. Restrictive Housing and Suicide Prevention ........ 12
20. Prison Rape Elimination Act (PREA) ........ 13
21. PREA Prisoner Incident Reporting ........ 13
22. Federal Acquisition Regulation (FAR) Agreement Provisions ........ 14
23. Guaranteed Minimum Bed Space ........ 15
24. Economic Rate Adjustments ........ 15
25. Billing and Financial Provisions ........ 16
26. Payment Procedures ........ 17
27. Hold Harmless ........ 17
28. Disputes ........ 17
29. Review of Services ........ 17
30. IGA Amendments ........ 18
31. Litigation ........ 18
32. The First Step Act ........ 18



**Local Government (initial):** [signature]
**Federal Government (initial):** TE

## 1. Authority

Pursuant to the authority, 106th Congress Public Law 553, Section 119 of the "Department of Justice Appropriations Act, 2001", this Intergovernmental Agreement (hereinafter referred to as "agreement") is entered into between the United States Marshals Service (USMS) (hereinafter referred to as the "Federal Government") and ***SAINT LAWRENCE COUNTY CORRECTIONAL FACILITY*** (hereinafter referred to as "Local Government"), who hereby agree as described in this document.

## 2. Purpose

The Federal Government and the Local Government establish this agreement allowing the USMS or other authorized agency user as noted in block #19, page one (1) of this agreement to house individuals detained on federal charges or federal court orders (hereinafter referred to as "Federal prisoners") with the Local Government at the ***Saint Lawrence County Correctional Facility 17 Commerce Lane, Canton, New York 13617*** (hereinafter referred to as "the Facility") designated in block #6 on page one (1) of this agreement.

## 3. Administration (October 2021)

The Local Government shall provide for the secure custody, safekeeping, housing, subsistence, and care of Federal prisoners in accordance with all state, local, and federal laws, standards, regulations, policies, and court orders applicable to the operation of the Facility. Federal prisoners shall be housed in a manner consistent with the Federal Performance Based Detention Standards (FPBDS) subset utilized by the USMS Detention Facility Review Program. These standards are set forth in Form USM-218 (provided as an attachment to this agreement). Facilities shall follow the current standards summarized in Form USM-218 and any other standards required by an authorized agency whose prisoners are housed by the Local Government pursuant to this agreement. Full text of the FPBDS can be found at: http://wwwASD.usmarshals.gov/prisoner/detention-standards.htm as an additional reference source for best practices.

***SAINT LAWRENCE COUNTY CORRECTIONAL FACILITY*** shall comply with Congressional mandates, federal laws, Executive Orders and all existing ***SAINT LAWRENCE COUNTY CORRECTIONAL FACILITY*** policies. ***SAINT LAWRENCE COUNTY CORRECTIONAL FACILITY*** shall provide a means for verification of any state inspections, accreditation, and, if applicable, any alternative correctional facility accreditations such as an accreditation from the American Correctional Association accreditation.

The USMS ensures the secure custody, care, and safekeeping of USMS prisoners. Accordingly, all housing or work assignments, and recreation or other activities for USMS prisoners are permitted only within secure areas of the building or within the secure external recreational/exercise areas. All work assignments for unsentenced Federal prisoners must be voluntary.

The Local Government shall conduct initial and periodic background and reference checks of applicants, employees, contractors, and volunteers. All allegations of staff misconduct shall be investigated and reported to law enforcement as appropriate. Staff misconduct involving or

affecting USMS prisoners shall be reported to the local district United States Marshal (USM), Chief, or their designee and to the USMS Prisoner Operations Division (POD) at PODCoCInquiries@usdoj.gov.
At all times, the Federal Government shall have access to the Facility and to the Federal prisoners, and to all records pertaining to this agreement, including financial records, for a retention period of three (3) years from the date of request by the Federal Government.

The Local Government shall maintain written policies and procedures that describe all facets of facility operations, maintenance, and administration. The Local Government shall maintain written contingency and emergency plans for situations including but not limited to riots, hunger strikes, disturbances, escapes, hostage situations, and mass prisoner relocation.

The Local Government shall maintain records of annual fire safety inspections. The Local Government shall maintain dangerous materials in accordance with government regulations.

The Local Government shall maintain an objective review, classification, and housing process. Federal prisoners shall be clearly identified as USMS prisoners in the classification system.

The Local Government shall ensure Federal prisoners under the age of 18 receive an age-appropriate diet, exercise, and education.

The Local Government shall ensure Federal prisoners under the age of 18 or charged as a juvenile shall be separated by sight and sound and out of regular contact with adult prisoners, except in emergency situations or approval from the court.

The Local Government shall keep the Facility clean and in good repair. Food service equipment shall meet established health and safety codes. The Local Government shall provide a minimum of three (3) meals per day that are varied and nutritionally adequate.
The Local Government shall provide safe and clean space and items for proper prisoner hygiene.

The Local Government will provide clean and serviceable bedding and clothing. Clothing and shoes shall be properly sized and temperature and weather appropriate. The Local government shall provide appropriate attire upon release.

The Local Government shall properly inventory, store, and return prisoner property upon release.
The Local Government shall provide adequate accommodations for prisoners with disabilities once accepted by the Local Government.
The Local Government shall prohibit discrimination on the basis of disability, race, sex, sexual orientation, religion, and national origin in the provision of services, programs, and activities.

The Local Government shall provide prisoners with reasonable opportunities to participate in religious practices, exercise, and access to mail, telephones, personal legal materials and legal reference materials or confidential counsel.

The Local Government shall maintain a grievance program with at least one level of appeal. The grievance procedures shall be made available to prisoners.

(End of Provision)

## 4. Place of Performance (May 2021)

The principal place of performance for this agreement shall be:

***Saint Lawrence County Correctional Facility***
***17 Commerce Lane***
***Canton, New York 13617***

(End of Provision)

## 5. Agreements Specialist (November 2021)

The Contracting Officer (KO) may designate in writing one or more government employees, by name and position title, to act for the KO under this agreement. Each designee shall be identified as an Agreements Specialist. Such designation(s) shall specify the scope and limitations of the authority so delegated; provided, that the designee(s) shall not change the terms or conditions of the agreement, unless the Agreements Specialist is a warranted KO, and this authority is delegated in the designation.

The Agreements Specialist is:

Name: ***Ramona Mosby***
Title: ***Grants/Cooperative Agreements Specialist***
Contact Information: ***202-868-2789***

(End of Provision)

## 6. Termination (May 2021)

The agreement can be terminated by either party for any reason. The requesting party, requester, seeking to terminate this agreement may do so by providing a written notice to the receiving party, requestee, at least thirty (30) calendar days in advance of the proposed termination date. An exception is made when an emergency situation requires the immediate relocation of Federal prisoners.

In order for the Local Government to initiate a termination of this agreement, the Local Government must:

a. As noted in this section, paragraph one above, the Local Government shall provide the Federal Government via the KO or designee a written notification by email at least thirty (30) calendar days in advance of the potential termination date unless an emergency situation requires the immediate relocation of Federal prisoners.
b. The Local Government shall provide adequate time, if applicable, for the Federal Government to transport and relocate Federal prisoners. Based on the number of

Federal prisoners at the facility, a thirty (30) day notice may not be adequate to vacate the premises; thus, the Local Government shall agree to provide the Federal Government a reasonable time frame to exit the facility.

c. The Local Government shall work with the Federal Government to locate alternative housing solutions for the Federal prisoners.
d. The Local Government may <u>not</u> request rate or per-diem increases once the Local Government has provided a termination notice to the Federal Government and the Federal Government has acknowledged the receipt of before mentioned notice.

Where the Local Government has received a cooperative agreement through the POD's Cooperative Agreement Program, the cooperative agreement termination and other applicable provisions shall:

a. be incorporated into this agreement;
b. survive after the expiration of the cooperative agreement; and
c. supersede the termination provisions of this agreement.

(End of Provision)

## 7. Assignment and Outsourcing of Jail Operations (May 2021)

The overall management and operation of the Facility housing Federal prisoners shall not be contracted out without the prior written notification of the Federal Government.

(End of Provision)

## 8. Medical Services (May 2021)

The Local Government shall maintain written procedures that describe actions taken in the event of a prisoner's death, assault, or medical emergency to include notification to the USMS.

The Local Government shall provide a medical and mental health screening upon admission to the Facility. The Local Government shall inform prisoners how to access health services.

*The Local Government shall notify the local USMS district office of <u>any</u> infectious disease outbreak.*

The Local Government shall provide Federal prisoners with the same level and range of care **inside** the Facility as that provided to state and local prisoners. The Local Government is financially responsible for all medical care provided **inside** the Facility to Federal prisoners. This includes the cost of all medical, dental, and mental health care as well as the cost of medical supplies, over-the-counter medications and any prescription medications routinely stocked by the Facility. The Facility is encouraged to purchase non-OTC medications for USMS prisoners through the USMS' National Managed Care Contract (NMCC) Discount Pharmacy Program. When possible, generic medications should be prescribed. The cost of all of the above-referenced medical care is covered by the Federal per-diem rate. The Federal Government will pay for the cost of specialized medical services not routinely provided within the Facility, such as dialysis.

The Federal Government is financially responsible for all medical care provided **outside** the Facility to Federal prisoners. The Federal Government must be billed directly by outside medical care providers pursuant to arrangements made by the Local Government for outside medical care. The Local Government shall utilize outside medical care providers that are covered by the USMS' NMCC Preferred Provider Network to the maximum extent practicable. The Local Government can obtain information about NMCC covered providers from the local USMS District Office. The Federal Government will be billed directly by the medical care provider **not** the Local Government. To ensure that Medicare rates are properly applied, medical claims for Federal prisoners must be on Centers for Medicare and Medicaid Services (CMS) Forms so that they can be re-priced to Medicare rates in accordance with the provisions of Title 18 U.S.C. Section 4006. The USMS will not reimburse the detention facility for medical payments made on behalf of USMS prisoners in the absence of a specific arrangement approved in writing by the USMS.

All **outside** medical care provided to Federal prisoners must be pre-approved by the Federal Government except in a medical emergency. In the event of an emergency, the Local Government shall proceed immediately with necessary medical treatment. The Local Government shall notify the Federal Government immediately regarding the nature of the Federal prisoner's illness or injury as well as the types of treatment provided.
The Facility shall have in place an adequate infectious disease control program which includes testing of all Federal prisoners for Tuberculosis (TB) in accordance with *National Commission on Correctional Health Care (NCCHC) Standards for Health Services in Jails.* TB testing shall occur with 14 days of intake (unless current TB tests results are available), be promptly documented in the Federal prisoner's medical record and the results forwarded to the local USMS District within thirty (30) days of intake. Special requests for expedited TB testing and clearance (to include time sensitive moves) shall be accomplished through advance coordination by the Federal Government and Local Government.

The Local Government shall immediately notify the Federal Government to include the local district office of any cases of suspected or active TB or any other highly communicable diseases such as but not limited to Coronavirus Disease (COVID), severe acute respiratory syndrome (SARS), Avian Flu, Methicillin-Resistant Staphylococcus Aureus (MRSA), Chicken Pox, etc., which might affect scheduled transports or productions.

When a federal prisoner is being transferred or released from the Facility, they will be provided with a minimum of seven (7) days of prescription medications and any medications already dispensed to the prisoner. Medical records and Form USM-553, *Prisoner in Transit Medical Summary* must travel with the Federal prisoner. If the records are maintained at a medical contractor's facility, it is the Local Government's responsibility to obtain them before a federal prisoner is transferred.

Federal prisoners may be charged a medical co-payment by the Local Government in accordance with the provisions of Title 18 U.S.C. Section 4013(d). The Federal Government is not responsible for medical co-payments and shall not be billed if the federal prisoner is indigent and cannot make the co-payment. Indigent Federal prisoners shall not be denied medical evaluation and treatment for failure to provide a co-payment.

(End of Provision)

### 9. Affordable Care Act (ACA) (May 2021)

Upon release of a Federal prisoner, the Local Government shall provide information regarding the Affordable Care Act (ACA). The ACA website is located at: http://www.hhs.gov/healthcare/about-the-aca/index.html.

(End of Provision)

### 10. Receiving and Discharging of Federal Prisoners (May 2021)

The Local Government agrees to accept Federal prisoners only upon presentation by a Law Enforcement Officer (LEO), USMS Task Force Officer (TFO) or a USMS designee with proper credentials.
The Local Government shall not relocate a Federal prisoner from one facility under its control to another facility not described in this agreement without permission of the Federal Government. Additional facilities within the same agreement shall be identified in a modification.

The Local Government agrees to release Federal prisoners only to LEOs of the authorized Federal Government agency initially committing the Federal prisoner (e.g., Drug Enforcement Administration (DEA), Immigration and Customs Enforcement (ICE)) or to a Deputy United States Marshal (DUSM) or USMS designee with proper credentials. Those Federal prisoners who are remanded to custody by the USMS may only be released to the USMS or an individual specified by the USMS in the Judicial District.

USMS Federal prisoners sought for a state or local court proceeding must be acquired through a Writ of Habeas Corpus or the Interstate Agreement on Detainers and then only with the concurrence of the jurisdictional United States Marshal (USM).

(End of Provision)

### 11. Prisoner Work Program (November 2021)

Federal prisoner labor shall be used in accordance with the Federal prisoner work plan developed by the Local Government and approved by the USMS. The Federal prisoner work plan must be voluntary, and may include work or program assignments for industrial, maintenance, custodial, service, or other jobs. Federal prisoners may not be required to work. Federal prisoners may volunteer to work within the secure confines of the facility if they sign a waiver of their right not to work. A Federal prisoner with suicidal tendencies, attempted escapes or escape history, violent history, gang affiliations or with detainers for pending charges with other local, state, or federal agencies will not be considered for the volunteer program. Federal prisoners are not permitted to act as trustees and may not work in positions that permit unsupervised contact with segregated prisoners or Federal prisoners of the opposite sex.

The Federal prisoners are restricted from operating equipment that may expose the Federal prisoners to grave bodily harm or any work assignment requiring security risk items and controlled tools which could be used to facilitate an escape or used as a weapon that could endanger staff,

citizens, or other inmates. Federal prisoners will not have access to prisoner or employee records. The Local Government will ensure that prisoners who volunteer to work are prohibited from keeping medication on their person while at the worksite, unless deemed necessary by medical personnel.

Federal prisoners must obtain required medical clearances before working in the food service areas. The Federal prisoner work program shall not conflict with any other requirements of the agreement and must comply with all applicable laws and regulations. Federal prisoners shall not be used to perform the responsibilities or duties of an employee of the Local Government. Appropriate safety/protective clothing and equipment shall be provided to Federal prisoner workers as appropriate. Federal prisoners shall not be assigned work that is considered hazardous or dangerous. This includes, but is not limited to, areas or assignments requiring great heights, extreme temperatures, use of toxic substances and unusual physical demands. Federal prisoner workers can be paid the identical rates of pay as other facility prisoners.

Federal prisoners shall be required to participate in normal housekeeping duties which help ensure the cleanliness of their housing area. Increases and reductions in privileges may be used as incentives to ensure that Federal prisoners keep their living areas clean.

(End of Provision)

## 12. Guard/Transportation Services to/from Medical Facility (May 2021)

When Medical Facility in block #14 on page one (1) of this agreement is checked, the Local Government agrees, subject to the availability of its personnel, to provide transportation and guard services for Federal prisoners housed at the Facility to and from a medical facility for outpatient care, and transportation and stationary guard services for Federal prisoners admitted to a medical facility.

These services shall be performed by at least two (2) armed and qualified LEOs or Correctional Officers (CO) according to the criteria specified by the County Entity running the facility. In all cases, these are part of a fulltime Law Enforcement Organization or Correctional Organization and that they have met the minimum training requirements.

The Local Government agrees to provide additional personnel if requested by the USMS to enhance specific requirements for security, prisoner monitoring, and contraband control. Federal prisoners are not permitted to use the telephone, internet or WIFI enabled devices, or to receive outside food, drinks, or deliveries (including flowers) without consent from the USMS. The Local Government shall restrain Federal prisoners by attaching at least one extremity to the hospital bed, stretcher, or chair at all times when medically possible. Pregnant or postpartum prisoners should not be restrained. Postpartum is the twelve-week period following childbirth, miscarriage, or abortion. See First Step Act provision for more information.

The reimbursable hourly rate, if agreed upon, will be shown in block #13 on page one (1) of this agreement.

Mileage shall be reimbursed in accordance with the current GSA mileage rate.

(End of Provision)

**13. Guard/Transportation Services to/from U.S. Courthouse (May 2021)**

When U.S. Courthouse in block #14 on page one (1) of this agreement is checked, the Local Government agrees, subject to the availability of its personnel, to provide transportation and guard services for Federal prisoners housed at its facility to and from the U.S. Courthouse. These services shall be performed by at least two (2) armed and qualified LEOs or COs. In all cases, these are part of a fulltime Law Enforcement Organization or Correctional Organization and that they have met the minimum training requirements.

The Local Government agrees to provide additional personnel if requested by the USMS to enhance specific requirements for security, prisoner monitoring, and contraband control.

Upon arrival at the courthouse, the Local Government's transportation guard will turn Federal prisoners over to the USMS only upon presentation of proper law enforcement credentials.

The Local Government will not transport Federal prisoners to any U.S. Courthouse without a specific request from the USMS who will provide the prisoner's name, the U.S. Courthouse, and the date the prisoner is to be transported.

Each prisoner will be fully restrained in handcuffs, waist chain, and leg restraints during transportation unless otherwise authorized by the USMS. Deviations from full restraints must be documented and reported monthly to the local district USM, Chief, or their designee and to the USMS POD at PODCoCInquiries@usdoj.gov.

The reimbursable hourly rate, if agreed upon, will be shown in block #13 on page one (1) of this agreement.

Mileage shall be reimbursed in accordance with the current GSA mileage rate.

(End of Provision)

**14. Guard/Transportation Services to Justice Prisoner & Alien Transportation System (JPATS) or Other (May 2021)**

When JPATS, Other or both in block #14 on page one (1) of this agreement is checked, the Local Government agrees, subject to the availability of its personnel, to provide transportation and escort guard services for Federal prisoners housed at its facility to and from the JPATS or other locations designated by the Federal Government.

These services shall be performed by at least two (2) armed and qualified LEOs or COs. In all cases, these are part of a fulltime Law Enforcement Organization or Correctional Organization and that they have met the minimum training requirements.

The Local Government agrees to provide additional personnel if requested by the USMS to enhance specific requirements for security, prisoner monitoring, and contraband control.



**Local Government (initial):** [initials]
**Federal Government (initial):** TE

The Local Government shall not transport Federal prisoners to the airlift or any other location without a specific request from the USMS who will provide the prisoner's name, location (district), and the date the prisoner is to be transported.

The Local Government shall turn Federal prisoners over to the USMS or an officer specified by the USMS only upon presentation of proper credentials.

Each prisoner will be fully restrained in handcuffs, waist chain, and leg restraints during transportation unless otherwise authorized by the USMS. Deviations from full restraints must be documented and reported monthly to the local district USM, Chief, or their designee and to the USMS POD at PODCoCInquiries@usdoj.gov.

The reimbursable hourly rate, if agreed upon, will be shown in block #13 on page one (1) of this agreement.

Mileage shall be reimbursed in accordance with the current GSA mileage rate.

(End of Provision)

### 15. Video Teleconference Hearings within the Facility (October 2021)

If available, the facility shall furnish, as applicable to this agreement, all things necessary for, or incident to, providing Video Teleconference (VTC) hearings within the facility. When VTC equipment is not available at the facility, the Federal Government, in coordination with the Courts, may assist with providing VTC equipment and ancillary items to the facility.

(End of Provision)

### 16. Optional Guard Services to Video Teleconference Hearings within Facility (May 2021)

When Video Teleconferencing (VTC) Hearings in block #14 on page one (1) of this agreement is checked, the Local Government agrees, subject to the availability of its personnel, to provide escort guard services for Federal prisoners housed at its facility to monitor, on a case-by-case basis, court hearings conducted via VTC within its facility per instruction of the Federal Judiciary.

The reimbursable hourly rate, if agreed upon, will be shown in block #13 on page one (1) of this agreement.

(End of Provision)

### 17. Special Notifications (May 2021)

The Local Government shall notify the Federal Government of any activity by a Federal prisoner, which would likely result in litigation or alleged criminal activity.

The Local Government shall immediately notify the Federal Government of an escape of a Federal prisoner. The Local Government shall use all reasonable means to apprehend the escaped Federal prisoner and all reasonable costs in connection therewith shall be borne by the Local Government.

The Federal Government shall have primary responsibility and authority to direct the pursuit and capture of such escaped Federal prisoners. Additionally, the Local Government shall notify the Federal Government as soon as possible when a Federal prisoner is involved in an attempted escape or conspiracy to escape from the Facility.

In the event of a medical emergency, death, or assault on or by a Federal prisoner, the Local Government shall immediately notify the Federal Government.

(End of Provision)

## 18. Body Worn Camera Information Requests (November 2021)

If the Local Government adopts a Body Worn Camera (BWC) use policy that mandates use of BWC for transport or other activities covered under the IGA, the agency shall, upon request by USMS, provide USMS with the audio/video footage and any metadata captured by the BWC pertaining to USMS prisoner incidents. The audio/video footage and any metadata may be requested by the USMS Body Worn Camera Program and the USMS Office of General Counsel. The agency agrees that no BWC footage depicting a USMS prisoner will be released without advance written notification to the USMS.

(End of Provision)

## 19. Restrictive Housing and Suicide Prevention (May 2021)

For the purposes of this agreement, "restrictive housing" means any type of detention that involves all of the following elements:

a. Removal from the general population, whether voluntary or involuntary;
b. Placement in a locked room or cell, whether alone or with another prisoner; and
c. Inability to leave the room or cell for the vast majority of the day, typically 22 hours or more.

For the purposes of this agreement, "vulnerable population" refers to prisoners who are more likely to be victimized in confinement settings, including but not limited to: juveniles; young adults (age 18-24 at time of admission through conviction);prisoners with serious mental illness; lesbian, gay, bisexual, prisoners who identify as sex nonconforming; pregnant and postpartum prisoners; infirmed prisoners and prisoners with medical needs.

The Local Government shall have written policies, procedures, and practices requiring that all prisoners in restrictive housing are personally observed by a CO at least twice per hour, but no more than thirty (30) minutes apart, on an irregular schedule. Prisoners who are violent or mentally ill or who demonstrate unusual or bizarre behavior shall receive more frequent observation; suicidal prisoners shall be under constant observation.

The Local Government shall immediately notify the appropriate Chief Deputy U.S. Marshal (CDUSM), or designee, and POD at PODCoCinquiries@usms.doj.gov when a member of a vulnerable population is placed in restrictive housing or their restrictive housing status changes.

The Local Government shall also provide reports to the USMS on a monthly basis listing all USMS prisoners who were detained in restrictive housing, and the reasons for their assignment to restrictive housing. When no USMS prisoners have been placed in restrictive housing during the reporting month, the Local Government shall notify USMS that there are no USMS prisoners to report. The report or a notification of no USMS prisoners in restrictive housing ' shall be submitted to the CDUSM or his or her designee and POD at PODCoCinquiries@usms.doj.gov, no later than the tenth day of each month in a standard format established by the USMS.

The Local Government shall have a comprehensive suicide-prevention program in place incorporating all aspects of identification, assessment, evaluation, treatment, preventive intervention, and annual training of all medical, mental health, and correctional staff.

Additional prisoner suicide prevention resources can be found at: https://www.usmarshals.gov/prisoner/suicide_prevention.htm and https://nicic.gov/.

(End of Provision)

## 20. Prison Rape Elimination Act (PREA) (November 2021)

The Facility must post Prison Rape Elimination Act (PREA) brochure/bulletins in each housing unit of the Facility. The Facility must abide by all relevant PREA regulations at: (https://www.prearesourcecenter.org/about/prison-rape-elimination-act-prea).

All sexual harassment and sexual assaults of or by a USMS prisoner must be reported to the district CDUSM or designee and the POD at: PREAinquiries@usdoj.gov.

In accordance with PREA, the Facility must arrange for a PREA audit every three (3) years. The Facility must maintain PREA compliance or be actively working towards compliance.
Additional resources can be found at: https://www.prearesourcecenter.org/.

Templates for PREA posters and brochures can be found at:
https://www.prearesourcecenter.org/library/search?keys=poster&cat=All

(End of Provision)

## 21. PREA Prisoner Incident Reporting (November 2021)

PREA posters shall contain information on how to report a sexual assault by using one of the following methods:

- Speaking with a staff member;
- Writing a letter reporting the alleged sexual misconduct to the person in charge or the USMS. To ensure confidentiality, use special (Legal) mail procedures;
- Filing an Emergency Prisoner Grievance - If you decide your complaint is too sensitive to file with the Officer in Charge, you can file your Grievance directly with the CDUSM. You can get the forms from your housing unit officer, or a Facility supervisor;

- Writing to the Office of Inspector General (OIG), which investigates allegations of staff misconduct. The address is: Office of Inspector General, U.S. Department of Justice, 950 Pennsylvania Ave. Room 4706, Washington, DC. 20530; or
- Calling, **at no expense to the victim,** the OIG. The phone number is 1-800-869-4499.

All allegations of sexual abuse reported to Facility staff must be reported and will be investigated. Information concerning the identity of a prisoner victim reporting a sexual assault, and the facts of the report itself, shall be limited to those who have the need to know in order to make decisions concerning the prisoner-victim's welfare and for law enforcement investigative purposes.

(End of Provision)

## 22. Federal Acquisition Regulation (FAR) Agreement Provisions (September 2025)

This agreement incorporates the following agreement provisions by reference, with the same force and effect as if it was given in full text. Upon request, the full text will be made available. The full text of this provision may be accessed electronically at: http://www.acquisition.gov.

**Agreement Provisions:**

FAR 52.222-4 Contract Work Hours and Safety Standards – Overtime (May 2018)

FAR 52.222-41 Service Contract Labor Standards. (August 2018)

FAR 52.222-42 Statement of Equivalent Rates for Federal Hires (May 2014)

FAR 52.222-43 Fair Labor Standards Act and the Service Contract Labor Standards – Price Adjustment (Multiyear and Option Contracts) (August 2018)

If the Collective Bargaining Agreement in block #15 on page one (1) of this Agreement is checked, the Local Government agrees In accordance with Section 2 (a) and 4 (c) of the Services Contract Act, as amended, employees employed by the contractor (s) in performing services covered by the Collective Bargaining Agreement (s) are to be paid wage rates and fringe benefits set forth in the current collective bargaining agreement and modified extension agreements. (Added to the IGA November 2024)

The current Local Government per-diem rates shall be the prevailing wages unless notified by the Federal Government.

If the Department of Labor Wage Determination in block #15 on page one (1) of this Agreement is checked, the Local Government agrees, in accordance with FAR 52.222.43 (a), (f), that it must notify the Federal Government of any increase or decrease in applicable wages and fringe benefits claimed under this clause within thirty (30) days after receiving a new wage determination.

(End of Provision)

## 23. Guaranteed Minimum Bed Space (September 2021)

This IGA ***does not*** contain a guaranteed minimum for bed space.

(End of Provision)

## 24. Economic Rate Adjustments (October 2021)

The Federal Government will use various price analysis techniques and procedures to ensure the rates established by this agreement is considered a fair and reasonable price. Examples of such techniques include, but are not limited to, the following:

a. Comparison of the requested rate with the Independent Government Estimate for detention services, otherwise known as the Core Rate;
b. Comparison with rates at other state or local facilities of similar size and economic conditions;
c. Comparison of previously proposed prices and previous Federal Government and commercial contract prices with current proposed prices for the same or similar items; and
d. Evaluation of the provided jail operating expense information.

The firm-fixed price per-diem rate for services is stipulated in block #11 on page one (1) of this agreement and shall not be subject to adjustment on the basis of ***SAINT LAWRENCE COUNTY CORRECTIONAL FACILITY*** actual cost experience in providing the service. The per-diem rate shall be fixed for a period from the effective date of this agreement forward for **thirty-six (36) consecutive months**. The per-diem rate covers the support of one Federal prisoner per "Federal prisoner day", which shall include the day of arrival, but not the day of departure.

The per-diem rate and the guard/transportation hourly rate will remain unchanged during the renewal period(s) unless the Local Government requests an economic rate adjustment. To request a per-diem economic rate adjustment, the Local Government will need to access USMS' Capture system via the Law Enforcement Enterprise Portal (LEEP) at https://portal.cjis.gov/wps/myportal/LEEPNG. The Local Government may contact the Agreements Specialist for more information.

An economic rate adjustment to either rate can be requested by the Local Government after **thirty-six (36) months of continuous performance**. Request for economic rate adjustments prior to the ending of the **thirty-six (36) month period** preceding the most recent rate adjustment shall only be considered if there are extreme circumstances that warrants a review of an out of cycle economic rate adjustment. Granting an out of cycle economic rate adjustment is not guaranteed.

To request an out of cycle per-diem economic rate adjustment, the Local Government will need to follow the same instructions as requesting an economic rate adjustment during the renewal period. For the request to be considered, the Local Government must demonstrate that its costs have substantially increased during the current **thirty-six (36) month period**. The Local Government shall provide the Agreements Specialist documentation to include cost and pricing data to justify

the facility's out of cycle economic rate adjustment request. The request and its supporting documentation are the sole responsibility of the Local Government to provide a complete request package to the Agreements Specialist. Incomplete or missing data may delay the request being processed or causing the request to be denied altogether.

Two (2) or more out of cycle economic rate adjustment requests within the same **thirty-six (36) month period** with an aggregate proposed increase of 25% or more are not permissible under this agreement.

(End of Provision)

## 25. Billing and Financial Provisions (May 2021)

The Local Government shall prepare and submit for certification and payment, original and separate invoices each month to each Federal Government component responsible for Federal prisoners housed at the Facility.

Address(es) for the component(s) is/are:

**United States Marshals Service**
*Northern District of New York*
100 S. Clinton St, 10th Floor
Syracuse, NY 13261
(315) 473-7601

**Immigration & Customs Enforcement**
*Eastern Regional Office*
70 Kimball Ave S.
Burlington, VT 05403
(802) 951-6428

**Federal Bureau of Prisons**
1000 Liberty Avenue,Ste 1315
Pittsburgh, PA 15222
**Email:** CPG-CCM-S@bop.gov
**Phone:** (412) 395-7930

To constitute a proper monthly invoice, the name and address of the Facility, the name of each Federal prisoner, their specific dates of confinement, the total days to be paid, the appropriate per diem rate as approved in the agreement, and the total amount billed (total days multiplied by the per-diem rate per day) shall be listed, along with the name, title, complete address, and telephone number of the Local Government official responsible for invoice preparation. Additional services provided, such as transportation and guard services, shall be listed separately and itemized.

Nothing contained herein shall be construed to obligate the Federal Government to any expenditure or obligation of funds in excess of, or in advance of, appropriations in accordance with the 31 U.S.C Section 1341 – Limitations on expending and obligating amounts.

(End of Provision)

## 26. Payment Procedures (May 2021)

The Federal Government will make payments to the Local Government at the address listed in block #6 on page one (1) of this agreement. The payments will be made promptly after the district office has received and certified the invoice is correct.

(End of Provision)

## 27. Hold Harmless (May 2021)

It is understood and agreed that the Local Government shall fully defend, indemnify, and hold harmless the United States of America, its officers, employees, agents, and servants, individually and officially, for any and all liability caused by any act of any member of the Local Government or anyone else arising out of the use, operation, or handling of any property (to include any vehicle, equipment, and supplies) furnished to the Local Government in which legal ownership is retained by the United States of America, and to pay all claims, damages, judgments, legal costs, adjuster fees, and attorney fees related thereto. The Local Government will be solely responsible for all maintenance, storage, and other expenses related to the care and responsibility for all property furnished to the Local Government.

(End of Provision)

## 28. Disputes (May 2021)

Disputes, questions, or concerns pertaining to this Agreement will be resolved between appropriate officials of each party. Both the parties agree that they will use their best efforts to resolve the dispute in an informal fashion through consultation and communication, or other forms of non-binding alternative dispute resolution mutually acceptable to the parties.

(End of Provision)

## 29. Review of Services (November 2021)

Review standards for prisoners may differ among authorized agency users. The Local Government agrees to allow periodic unannounced reviews by Federal Government, to include approved Federal contractors, in accordance with the standards required by any or all of the Federal authorized agency users whose prisoners may be housed pursuant to this Agreement. A summary of inspection findings will be shared with the facility administrator in order to promote improvements to facility operations, conditions of confinement, and levels of services. If the Federal Government identifies significant finding(s) during the review, the Local Government will provide the Federal Government with a corrective action plan to address the issue(s).

(End of Provision)



**Local Government (initial):** [initials]
**Federal Government (initial):** TE

## 30. IGA Amendments (May 2021)

For all amendments except for full or partial terminations, either party may initiate a request for amendment to this agreement in writing. All amendments negotiated will be effective only upon written approval of both parties.

(End of Provision)

## 31. Litigation (May 2021)

The Federal Government shall be notified, in writing, of all litigation pertaining to this agreement and provided copies of any pleadings filed or said litigation within five (5) business days of the filing.

The Local Government shall cooperate with the Federal Government legal staff and the United States Attorney regarding any requests pertaining to Federal Government or Local Government litigation.

(End of Provision)

## 32. The First Step Act (May 2021)

This agreement refers the Local Government facility operations and administrations to the following sections of the First Step Act:

a. Section 613 of Public Law 115-391 the FIRST STEP Act of 2018 and 18 USC 5043 with respect to any USMS juveniles in custody.

b. Section 301 of Public Law 115-391 the FIRST STEP Act of 2018 and that pursuant to USMS policy that these requirements have been adopted for all pregnant and postpartum USMS prisoners, regardless of case status. The postpartum period is twelve weeks after childbirth, miscarriage, or abortion.

(End of Provision)

(End of Agreement)

```
REGISTER OF WAGE DETERMINATION UNDER   | U.S. DEPARTMENT OF LABOR
   THE SERVICE CONTRACT ACT            |EMPLOYMENT STANDARDS ADMINISTRATION
   By direction of the Secretary       | WAGE AND HOUR DIVISION
          of Labor                     |        WASHINGTON D.C.  20210
                                       |
                                       |
                                       |
                                       | Wage Determination No.: CBA-2026-421
Diane Koplewski          Division of   |          Revision No.: 0
Director            Wage Determinations| Date Of Last Revision: 07/29/2026
_______________________________________|_______________________________________
```

State: New York

Area: St Lawrence

---

Employed on U.S. MARSHALS SERVICE contract for Employed on DEPT OF JUSTICE US MARSHALS SVC(IGA 52-04-0000) for Prisoner Housing and Guard/Transport Services.

Collective Bargaining Agreement between contractor: ST LAWRENCE COUNTY, and union: Council 82, AFSCME Local No.2390S (Supervisors) St. Lawrence County Local , effective 11/01/2021 through 12/31/2026.

In accordance with Section 2(a) and 4(c) of the Service Contract Act, as amended, employees employed by the contractor(s) in performing services covered by the Collective Bargaining Agreement(s) are to be paid wage rates and fringe benefits set forth in the current collective bargaining agreement and modified extension agreement(s).

REGISTER OF WAGE DETERMINATION UNDER | U.S. DEPARTMENT OF LABOR
THE SERVICE CONTRACT ACT |EMPLOYMENT STANDARDS ADMINISTRATION
By direction of the Secretary | WAGE AND HOUR DIVISION
of Labor | WASHINGTON D.C. 20210

| Wage Determination No.: CBA-2026-422
Diane Koplewski Division of | Revision No.: 0
Director Wage Determinations| Date Of Last Revision: 07/29/2026

State: New York

Area: St Lawrence

Employed on U.S. MARSHALS SERVICE contract for Employed on DEPT OF JUSTICE US MARSHALS SVC(IGA 52-04-0000) for Prisoner Housing and Guard/Transport Services.

Collective Bargaining Agreement between contractor: ST LAWRENCE COUNTY, and union: Council 82, AFSCME Local No.2390 Local , effective 11/01/2021 through 12/31/2024.

In accordance with Section 2(a) and 4(c) of the Service Contract Act, as amended, employees employed by the contractor(s) in performing services covered by the Collective Bargaining Agreement(s) are to be paid wage rates and fringe benefits set forth in the current collective bargaining agreement and modified extension agreement(s).

**U.S. Department of Justice**
United States Marshals Service

# Detention Facility Review

## FACILITY FACTS

### FACILITY OVERVIEW

Facility Name

Physical Address

Phone Number | Fax Number

City | State | Zip Code

County | District

Contract/Agreement Number | Contract/Agreement Type (Private, IGA, LUA) | Expiration Date

Closest USMS Office Name

Driving Time from Closest USMS Office ____ minutes

Driving Distance from Closest USMS Office ____ miles

Date of Last USMS Detention Facility Review

**Points of Contact (Administrative, Facility, Intelligence, Medical, PREA, Restrictive Housing, Security)**
(If needed, use "Other Notes Section" on last page to document more than one point of contact.)

Title | Name

Type of Contact | Phone Number | Extension | Email Address

Title | Name

Type of Contact | Phone Number | Extension | Email Address

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

| Title | Name |
|---|---|
| | |

| Type of Contact | Phone Number | Extension | Email Address |
|---|---|---|---|
| | | | |

| Title | Name |
|---|---|
| | |

| Type of Contact | Phone Number | Extension | Email Address |
|---|---|---|---|
| | | | |

| Title | Name |
|---|---|
| | |

| Type of Contact | Phone Number | Extension | Email Address |
|---|---|---|---|
| | | | |

| Title | Name |
|---|---|
| | |

| Type of Contact | Phone Number | Extension | Email Address |
|---|---|---|---|
| | | | |

| Title | Name |
|---|---|
| | |

| Type of Contact | Phone Number | Extension | Email Address |
|---|---|---|---|
| | | | |

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Prisoner Information** (Annotate the number of prisoners per category)

| | Adult Male | Adult Female | Juvenile Male | Juvenile Female | Total |
|---|---|---|---|---|---|
| Total Facility Bed Capacity | | | | | |
| USMS Allocated Beds | | | | | |
| Facility Average Daily Population (Last 12 Months) | | | | | |
| USMS Average Daily Population | | | | | |
| Local/Non-Federal Average Daily Population | | | | | |
| Bureau of Prisons Average Daily Population | | | | | |
| ICE Average Daily Population | | | | | |

**Security Staff Information** (Annotate number of authorized and filled positions per facility's staffing plan)

| | Authorized | Filled |
|---|---|---|
| Warden | | |
| Assistant Warden | | |
| Chief of Security | | |
| Shift Supervisors | | |
| Other Supervisors | | |
| Corrections Officers | | |
| Transportation Officers | | |
| Perimeter Security | | |
| Restrictive Housing Security | | |
| Other Security | | |

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Medical Staff Information** (Annotate number of authorized and filled positions per facility's staffing plan)

| | Authorized | Filled |
|---|---|---|
| Physician | | |
| Physician's Assistant | | |
| Nurse Practitioner | | |
| Registered Nurse | | |
| Licensed Practical Nurse | | |
| Mental Health Professional | | |
| Other Medical Staff | | |

**Contraband**

List facility's total number of contraband incidents since last USMS DFR (if applicable).

| Drugs or Alcohol | Drugs or Alcohol Paraphernalia | Electronic Devices |
|---|---|---|
| | | |
| Electronic Device Accessory | Weapon | Tool |
| | | |

**Incidents**

List facility's total number of incidents since last USMS DFR (if applicable).

| Suicides | Suicide Attempts | Escapes |
|---|---|---|
| | | |
| Escape Attempts | Physical Assaults on Prisoners | Physical Assaults on Staff |
| | | |
| Health Care Grievances | Natural Deaths | Sexual Assaults on Prisoners |
| | | |
| Sexual Assaults on Staff | Homicides | Riots/Disturbances |
| | | |

| Overdose Deaths | Overdoses | Use of Force | Excessive Use of Force |
|---|---|---|---|
| | | | |

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Was the USMS notified of all incidents involving USMS prisoners?

◯ Yes ◯ No

**Incidents Not Reported** (Contraband, Suicide, Suicide Attempt, Escapes, Escapes Attempts, Physical Assaults on Prisoners, Physical Assault on Staff, Health Care Grievances, Natural Death, Sexual Assault on Prisoners, Sexual Assault on Staff, Homicides, Riots/Distributions, Overdoses, Use of Force). (If needed, use "Other Notes Section" on last page to document more than one incident.)

| Incident Type (Use Incident types listed above) | Incident Subtype (Leave blank) | Date of Incident |
|---|---|---|
| | | |

Remarks

| Incident Type (Use Incident types listed above) | Incident Subtype (Leave blank) | Date of Incident |
|---|---|---|
| | | |

Remarks

| Incident Type (Use Incident types listed above) | Incident Subtype (Leave blank) | Date of Incident |
|---|---|---|
| | | |

Remarks

| Incident Type (Use Incident types listed above) | Incident Subtype (Leave blank) | Date of Incident |
|---|---|---|
| | | |

Remarks

| Incident Type (Use Incident types listed above) | Incident Subtype (Leave blank) | Date of Incident |
|---|---|---|
| | | |

Remarks

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Court Action**
(If needed, use "Other Notes Section" on last page to document more than 3 actions)

Are there any court orders or pending major litigation affecting the facility?

◯ Yes ◯ No

Case Name/Number

Select Functional Area

☐ Admin & Mgmt ☐ Food Service
☐ Health Care ☐ Safety & Sanitation
☐ Security & Control ☐ Service & Programs

Date of Court Filing

Case Name/Number

Select Functional Area

☐ Admin & Mgmt ☐ Food Service
☐ Health Care ☐ Safety & Sanitation
☐ Security & Control ☐ Service & Programs

Date of Court Filing

Case Name/Number

Select Functional Area

☐ Admin & Mgmt ☐ Food Service
☐ Health Care ☐ Safety & Sanitation
☐ Security & Control ☐ Service & Programs

Date of Court Filing

## ADMINISTRATION AND MANAGEMENT

**Policy Development and Monitoring**

Does the facility maintain policies and procedures that describe facility operations, maintenance and administration?

◯ Yes ◯ No

Do policies have a date documenting the last time the responsible facility manager/administrator reviewed the policy to ensure it remains current, accurate, and relevant to the facility's operation?

◯ Yes ◯ No

If 'Yes', Date of Last Internal Review

**Policy Communication and Access**

Are policies and procedures communicated to all employees?

◯ Yes ◯ No

Does staff have 24/7 access to policies and procedures?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Prisoner Property and Money**

Does the facility properly inventory prisoner property?

◯ Yes ◯ No

Does the facility properly store prisoner property?

◯ Yes ◯ No

Does the facility properly return prisoner property?

◯ Yes ◯ No

Does the facility properly inventory prisoner money?

◯ Yes ◯ No

Does the facility properly store prisoner money?

◯ Yes ◯ No

Does the facility properly return prisoner money?

◯ Yes ◯ No

**Prisoner Release**

Has the facility erroneously released ANY prisoner(s) during the review period?

◯ Yes ◯ No

Total number of non-USMS prisoners erroneously released

Total number of USMS prisoners erroneously released

**Accommodations for Prisoners with Disabilities**

Does the facility accept prisoners with disabilities?

◯ Yes ◯ No

Are adequate accommodations made available for prisoners with disabilities?

◯ Yes ◯ No

**Contingency/Emergency Plans**

Does the facility have a written emergency plan in place for situations that threaten facility security? (e.g., riots, hunger strikes, disturbances, escapes, and hostage situations.)

◯ Yes ◯ No

Does the emergency plan have a date documenting the last time the responsible facility manager/administrator reviewed the policy to ensure it remains current, accurate, and relevant to the facility's operation?

◯ Yes ◯ No

If 'Yes', Date of Last Emergency Plan Review

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Is a hard copy of the emergency plan available for incorporation into the district's detention plan?

◯ Yes ◯ No

Does the facility's emergency plan include the USMS prisoners housed at the facility?

◯ Yes ◯ No

Does the facility have a written contingency plan in place for situations involving mass prisoner relocation? (e.g., weather, fire, flooding, facility not habitable.)

◯ Yes ◯ No

Does the contingency plan have a date documenting the last time the responsible facility manager/administrator reviewed the plan to ensure it remains current, accurate, and relevant to the facility's operation?

◯ Yes ◯ No

If 'Yes', Date of Last Contingency Plan Review

Is a hard copy of the contingency plan available for incorporation into the district's detention plan?

◯ Yes ◯ No

Does the facility's contingency plan include the USMS prisoners housed at the facility?

◯ Yes ◯ No

**Staff Background Checks**

Does the facility verify identity of employees prior to hiring via Fingerprints:

◯ Yes ◯ No

Does the facility verify identity of employees prior to hiring via Social Security Number:

◯ Yes ◯ No

Does the facility verify identity of employees prior to hiring via Date of Birth:

◯ Yes ◯ No

Does the facility verify identity of contractors prior to hiring via Fingerprints:

◯ Yes ◯ No

Does the facility verify identity of contractors prior to hiring via Social Security Number:

◯ Yes ◯ No

Does the facility verify identity of contractors prior to hiring via Date of Birth:

◯ Yes ◯ No

Does the facility verify identity of volunteers prior to hiring via Fingerprints:

◯ Yes ◯ No

Does the facility verify identity of volunteers prior to hiring via Social Security Number:

◯ Yes ◯ No

Does the facility verify identity of volunteers prior to hiring via Date of Birth:

◯ Yes ◯ No

Are initial background and reference checks completed for all employees prior to hiring?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Are initial background and reference checks completed for all contractors prior to hiring?

( Yes ( No

Are initial background and reference checks completed for all volunteers prior to hiring?

( Yes ( No

Do the background and reference checks include verification of employment history for the past five (5) years?

( Yes ( No

Do the background and reference checks include verification residency for the past three (3) years?

( Yes ( No

Do the background and reference checks include credit history to reveal current delinquency?

( Yes ( No

Do the background and reference checks include credit history to reveal unresolved liens?

( Yes ( No

Do the background and reference checks include credit history to reveal accounts in collection?

( Yes ( No

Do the background and reference checks include credit history to reveal court-ordered judgments?

( Yes ( No

Do the background and reference checks include criminal history to reveal felony convictions?

( Yes ( No

Do the background and reference checks include criminal history to reveal disqualifying misdemeanor convictions?

( Yes ( No

Do the background and reference checks include verification that there are no derogatory civil records?

( Yes ( No

Do the background and reference checks address alcohol dependency?

( Yes ( No

Do the background and reference checks address drug dependency?

( Yes ( No

Does the facility conduct re-investigations of employees, contractors, and volunteers?

( Yes ( No

If so, how often? [ ]

**Reporting/Investigating Staff Misconduct**

How many administrative allegations of staff misconduct were reported since the last DFR (if applicable)?

[ ]

How many criminal allegations of staff misconduct were reported since the last USMS DFR (if applicable)?

[ ]

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

How many criminal allegations of staff misconduct were reported to law enforcement since the last USMS DFR (if applicable)?

**Prisoner Anti-Discrimination**

Does the facility have a prisoner anti-discrimination policy?

◯ Yes ◯ No

If Yes, does the policy address prisoner:

| | | |
|---|---|---|
| Age? | ◯ Yes | ◯ No |
| Disability? | ◯ Yes | ◯ No |
| Equal Pay/Compensation? | ◯ Yes | ◯ No |
| Harassment? | ◯ Yes | ◯ No |
| National Origin? | ◯ Yes | ◯ No |
| Pregnancy? | ◯ Yes | ◯ No |
| Race/Color? | ◯ Yes | ◯ No |
| Religion? | ◯ Yes | ◯ No |
| Retaliation? | ◯ Yes | ◯ No |
| Sex? | ◯ Yes | ◯ No |
| Sexual Orientation? | ◯ Yes | ◯ No |
| Sexual Harassment? | ◯ Yes | ◯ No |
| Are services, programs, and activities provided to all eligible prisoners? | ◯ Yes | ◯ No |

**Prison Rape Elimination Act (PREA) Compliance**

Does the facility have a PREA compliance program?

◯ Yes ◯ No

Does the program address the following:

| | | |
|---|---|---|
| Zero tolerance toward all forms of sexual abuse and sexual harassment? | ◯ Yes | ◯ No |
| Prevention and response planning? | ◯ Yes | ◯ No |
| Prisoner training and education? | ◯ Yes | ◯ No |
| Employee training and education? | ◯ Yes | ◯ No |
| Screening for risk of sexual victimization? | ◯ Yes | ◯ No |
| Reporting and investigations? | ◯ Yes | ◯ No |
| Discipline? | ◯ Yes | ◯ No |
| Medical/ mental health care? | ◯ Yes | ◯ No |
| Auditing? | ◯ Yes | ◯ No |
| Corrective action? | ◯ Yes | ◯ No |
| State compliance? | ◯ Yes | ◯ No |

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Has the facility had an audit conducted by a DOJ certified PREA auditor within the past 3 years?

( Yes ( No

If 'No' to the previous question, has a DOJ PREA audit been scheduled?

( Yes ( No

If Yes, what is the scheduled DOJ PREA Audit Date?

[ ]

If 'Yes' to the previous question, is a hard copy of the PREA audit available?

( Yes ( No

If 'Yes', Audit Date [ ] What was the name of the Auditor? [ ]

If an audit was conducted, how many deficiencies were noted in the last PREA audit? [ ]

If there were deficiencies, is there a corrective action plan in place?

( Yes ( No

If Yes, has corrective action taken place?

( Yes ( No

Reason for not scheduling a PREA audit:

- ☐ Expense of PREA Audit
- ☐ Expense of constructions upgrades
- ☐ Expense of Technology upgrades
- ☐ Unaware of requirement
- ☐ Previous PREA audit failure

## HEALTH CARE

### Intake Screening

Does the facility have a designated health authority with responsibility for health care services?

( Yes ( No

Does the facility have policy or procedures for medical, mental health, and dental health screening during intake?

( Yes ( No

Do all prisoners undergo medical screening during the initial intake process?

( Yes ( No

If 'No', how long after intake does the medical screening occur?

[ ] months [ ] days

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Does the facility ensure TB testing during the initial intake process?

◯ Yes ◯ No

If 'No', how long after intake does the TB test occur?

[ ] months [ ] days

Are TB test results provided to the USMS within 14 days?

◯ Yes ◯ No

If 'No', when were results provided?

[ ] months [ ] days

Do all prisoners undergo mental health screening during the initial intake process?

◯ Yes ◯ No

If 'No', how long after intake does the mental health screening occur?

[ ] months [ ] days

Do all prisoners undergo dental health screening within 14-days after the initial intake process?

◯ Yes ◯ No

If 'No', how long after intake does the dental health screening occur?

[ ] months [ ] days

Are all comprehensive medical screening results reviewed by a physician?

◯ Yes ◯ No

If Yes, how long after intake does this occur?

[ ] months [ ] days

Is a comprehensive health appraisal for each prisoner completed within 14-days after initial intake?

◯ Yes ◯ No

If 'No', how long after intake does the appraisal occur?

[ ] months [ ] days

Are intake medical screening records maintained for every prisoner?

◯ Yes ◯ No

**Medical, Dental, and Mental Health**

Does the facility have a medical unit staffed 24/7?

◯ Yes ◯ No

Does the facility employ an on-site mental health professional?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Are prisoners with mental health issues identified as part of the vulnerable population?

( Yes ( No

Are prisoners with mental health issues referred to qualified mental health professionals?

( Yes ( No

**Routine, Chronic, and Emergency Health Services**

Are all prisoners made aware of the process for requesting health care services?

( Yes ( No

Does the facility document receipt and disposition of health care requests by prisoners?

( Yes ( No

Does the facility document all health care rendered to prisoners?

( Yes ( No

Does the facility document all health care referrals?

( Yes ( No

Does the facility document all health care refused by prisoners?

( Yes ( No

Does the facility have a policy or procedures for identifying medical emergencies?

( Yes ( No

Does the facility provide access to prescription medication?

( Yes ( No

Does the facility participate in the National Manged Care Contract (NMCC) and Pharmacy Program?

( Yes ( No

Does the facility have an onsite pharmacy?

( Yes ( No

Does the facility provide a 7-day supply of prescribed medication upon transfer or release?

( Yes ( No

Does the facility document responses to prisoner health care grievances?

( Yes ( No

When does the facility respond to health care grievances?

[ ] Days

**Response to Medical, Mental and Dental Health Needs**

Are all prisoners who require health care beyond the capacity of the facility transferred to a facility where such care is available?

( Yes ( No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Are facility staff certified in CPR and basic first aid?

◯ Yes ◯ No

With the exception of emergencies, does the facility submit a request to the district to request approval for outside medical services?

◯ Yes ◯ No

Does the facility immediately notify the district in the event of a USMS prisoner medical emergency?

◯ Yes ◯ No

**Suicide Prevention**

Does the facility have a suicide prevention program?

◯ Yes ◯ No

Does the facility document staff training for prisoner suicide prevention?

◯ Yes ◯ No

Does the facility have procedures for identifying prisoners at risk for suicide?

◯ Yes ◯ No

Does the facility have procedures for monitoring prisoners at risk for suicide?

◯ Yes ◯ No

How often are welfare inspections conducted on suicidal prisoners?

☐ Constant Observation ☐ Every 15 mins ☐ Every 30 mins ☐ Every 45 mins ☐ Every hour
☐ More than 1 hour ☐ Never

Does the facility report suicidal gestures, remarks, tendencies, and attempts to the USMS?

◯ Yes ◯ No

Does the facility provide mental health services to suicidal prisoners?

◯ Yes ◯ No

Does the facility report restrictive housing of suicidal prisoners to the USMS?

◯ Yes ◯ No

How many suicidal prisoners were placed in restrictive housing during the rating period?

[ ]

**Prisoner Death**

Does the facility have procedures to respond to a prisoner's death?

◯ Yes ◯ No

Does the facility immediately notify the USMS in the event of a USMS prisoner death?

◯ Yes ◯ No

Does the facility review each prisoner death?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Infectious Disease**

Does the facility have written plan to address the management and reporting of infectious and communicable diseases?

◯ Yes ◯ No

Does the plan include:

| | | |
|---|---|---|
| HIV? | ◯ Yes | ◯ No |
| Tuberculosis? | ◯ Yes | ◯ No |
| Hepatitis? | ◯ Yes | ◯ No |
| Influenza? | ◯ Yes | ◯ No |
| Chlamydia? | ◯ Yes | ◯ No |
| COVID? | ◯ Yes | ◯ No |
| Ebola? | ◯ Yes | ◯ No |
| HPV? | ◯ Yes | ◯ No |
| Salmonella? | ◯ Yes | ◯ No |
| Scabies? | ◯ Yes | ◯ No |
| Zika? | ◯ Yes | ◯ No |
| E. coli? | ◯ Yes | ◯ No |
| Chicken Pox? | ◯ Yes | ◯ No |

Does the facility report all cases of infectious and communicable diseases to the CDC?

◯ Yes ◯ No

Does the facility report all cases of infectious and communicable diseases to the USMS?

◯ Yes ◯ No

Does the facility have an infectious and communicable disease policy or procedures to:

| | | |
|---|---|---|
| Identify prisoners with infectious and communicable diseases? | ◯ Yes | ◯ No |
| Treat prisoners with infectious and communicable diseases? | ◯ Yes | ◯ No |
| Quarantine prisoners with infectious and communicable diseases? | ◯ Yes | ◯ No |

Has the facility tested communication with local and federal health authorities?

◯ Yes ◯ No

Does the facility maintain adequate PPE for all staff in the event of a pandemic?

◯ Yes ◯ No

Does the facility maintain adequate PPE for all prisoners in the event of a pandemic?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

## SECURITY AND CONTROL

### Correctional Supervision

Are correctional officer posts located in, or immediately adjacent to, prisoner living areas so officers can respond promptly to emergency situations?

◯ Yes ◯ No

Does the facility use a minimum of 2 armed officers for prisoners transportation and hospital guarding?

◯ Yes ◯ No

Are prisoners managed and supervised 24 hours a day, 7 days a week?

◯ Yes ◯ No

### Security Features

Are weekly inspections of all security devices conducted?

◯ Yes ◯ No

### Security Inspections

Do supervisory staff conduct intermittent security sweeps of all areas prisoners occupy?

◯ Yes ◯ No

### Searches and Contraband

Does the facility have procedures for searching prisoners for contraband upon arrival to the facility?

◯ Yes ◯ No

Does the facility have procedures for searching prisoners for contraband prior to transporting the prisoner?

◯ Yes ◯ No

Does the facility have procedures for searching prisoners for contraband after prisoner visitation?

◯ Yes ◯ No

Does the facility have procedures for searching prisoners for contraband after work details?

◯ Yes ◯ No

Does the facility notify the USMS if a USMS prisoner is found with contraband?

◯ Yes ◯ No

### Prisoner Accountability and Supervision

Does the facility have procedures for physically counting prisoners?

◯ Yes ◯ No

If Yes, provide number of counts per day

| |
|---|
| |

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

### Use of Force

Does the facility have procedures for use of force?

◯ Yes ◯ No

Does the facility document every use of force incident?

◯ Yes ◯ No

Does the facility notify the USMS of every use of force incident involving USMS prisoners?

◯ Yes ◯ No

Does the facility investigate all use of force incidents?

◯ Yes ◯ No

### Non-routine Use of Restraints

Does the facility have procedures for use of restraints?

◯ Yes ◯ No

Is the use of restraints on pregnant or postpartum USMS prisoners documented?

◯ Yes ◯ No

Does the facility report the use of restraints on pregnant or postpartum USMS prisoners?

◯ Yes ◯ No

Number of pregnant USMS prisoners housed during the period:

[ ]

### Key Control

Are keys controlled and inventoried?

◯ Yes ◯ No

### Tools and Culinary Equipment Control

Are tools and culinary equipment controlled and inventoried?

◯ Yes ◯ No

How many missing items were reported during the rating period?

[ ]

### Weapons Control

Does the facility have procedures for the control and use of firearms and less-than-lethal devices?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Prisoner Handbook and Discipline**

Do prisoners have 24/7 access to a prisoner rule/handbook in English?

◯ Yes ◯ No

Does the prisoner rule/handbook include facility rules and disciplinary procedures for violations?

◯ Yes ◯ No

Do prisoners have 24/7 access to a prisoner rule/handbook in Spanish?

◯ Yes ◯ No

Does the prisoner rule/handbook include facility rules and disciplinary procedures for violations?

◯ Yes ◯ No

**Restrictive Housing**

Does the facility have written procedures for restrictive housing?

◯ Yes ◯ No

Does the facility have written procedures for monitoring prisoners in restrictive housing?

◯ Yes ◯ No

Does the facility immediately report restrictive housing of any USMS prisoner in the vulnerable population?

◯ Yes ◯ No

How many USMS prisoners in the vulnerable population were placed in restrictive housing during the rating period?

[ ]

Does the facility report restrictive housing of every USMS prisoner, monthly to the USMS?

◯ Yes ◯ No

If Yes, how many USMS prisoners were placed in restrictive housing since the rating period?

[ ]

How does the facility report restrictive housing to the USMS?

☐ Email ☐ Invoices ☐ Restrictive Housing Module

Does the facility have procedures for reintegration of a prisoner from restrictive housing into the general population?

◯ Yes ◯ No

Does the facility notify the prisoner of the reason for restrictive housing?

◯ Yes ◯ No

Does the facility conduct a disciplinary hearing within 7 days?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Criminal Organization**
(If needed, use "Other Notes Section" on last page to document more than 3 organizations.)

Does the facility collect criminal organization or security threat group information?

Yes No

| Name of Criminal Organization | Category (Leave blank) | Organization Level (Leave blank) | OID (Leave blank) |
|---|---|---|---|
| | | | |

Remarks

| Name of Criminal Organization | Category (Leave blank) | Organization Level (Leave blank) | OID (Leave blank) |
|---|---|---|---|
| | | | |

Remarks

| Name of Criminal Organization | Category (Leave blank) | Organization Level (Leave blank) | OID (Leave blank) |
|---|---|---|---|
| | | | |

Remarks

## FOOD SERVICE

**Sanitation Requirements**

Has the facility been inspected by an external entity within the past 12 months to ensure that the food service and equipment meets established health, sanitation, and safety protocols?

Yes No

If 'Yes', Date of Inspection

Were any violations identified?

Yes No

Have those violations been corrected?

Yes No

Was the facility re-inspected to ensure the violations were corrected properly?

Yes No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

### Adequate and Varied Meals

Does the facility provide 3 meals per day?

◯ Yes ◯ No

Does the facility provide a minimum of 2 hot meals per day?

◯ Yes ◯ No

Does the facility provide meals that are nutritionally adequate and varied, as approved by a dietitian?

◯ Yes ◯ No

Does the facility serve meals that match the approved meal menus?

◯ Yes ◯ No

Does the facility provide special meals for prisoner religious or medical needs?

◯ Yes ◯ No

## SAFETY AND SANITATION

### Fire Safety

Was an annual fire safety inspection conducted by an external entity?

◯ Yes ◯ No

If 'Yes', Date of Inspection

[ ]

Were any violations identified?

◯ Yes ◯ No

Have those violations been corrected?

◯ Yes ◯ No

Was the facility re-inspected to ensure the violations were corrected properly?

◯ Yes ◯ No

### Control of Dangerous Materials

Does the facility have procedures for the maintenance, inventory, and storage of flammable, toxic, and caustic materials and chemicals?

◯ Yes ◯ No

Does the facility have adequate personal protective equipment for the safe handling of chemicals?

◯ Yes ◯ No

Does the facility receive training on the safe use of each chemical?

◯ Yes ◯ No

If yes to the above question, is the training documented?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Clothing, Laundry and Bedding**

Are all prisoners issued at least two clean sets of temperature appropriate and properly sized clothing, to include uniforms, socks, underwear, t-shirts, braziers, and shoes?

◯ Yes ◯ No

Do prisoners have access to laundry facilities, or the ability to have their clothing items washed?

◯ Yes ◯ No

Do all prisoners receive adequate bedding, to include blanket, sheets, mattress and pillow?

◯ Yes ◯ No

How often is bedding washed or exchanged? (Weekly, Every 2 weeks, Every 3 weeks, Monthly, Every other month, Never)

☐ Weekly ☐ Every 2 Wks ☐ Every 3 Wks ☐ Monthly ☐ Every other month ☐ Never

Are exceptions to the laundry schedule made when clothes are soiled?

◯ Yes ◯ No

Are exceptions to the linen schedule made when linen and mattresses are soiled?

◯ Yes ◯ No

Are mattresses a minimum of 12 inches from the floor?

◯ Yes ◯ No

**Housing**

Are single cells a minimum of 56 square feet?

◯ Yes ◯ No

Are double cells a minimum of 72.5 square feet?

◯ Yes ◯ No

Does the facility triple bunk or use boat beds?

◯ Yes ◯ No

How many times did during the rating period?

☐

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Personal Hygiene**

Are toiletries provided to indigent prisoners at no cost?

( Yes ( No

Are the following available at no cost:

| | | |
|---|---|---|
| Soap? | ( Yes | ( No |
| If No, are all prisoner charged the same fee? | ( Yes | ( No |
| Toothpaste? | ( Yes | ( No |
| If No, are all prisoner charged the same fee? | ( Yes | ( No |
| Razors? | ( Yes | ( No |
| If No, are all prisoner charged the same fee? | ( Yes | ( No |
| Shampoo? | ( Yes | ( No |
| If No, are all prisoner charged the same fee? | ( Yes | ( No |
| Sanitary Napkins? | ( Yes | ( No |
| If No, are all prisoner charged the same fee? | ( Yes | ( No |
| Tampons? | ( Yes | ( No |
| If No, are all prisoner charged the same fee? | ( Yes | ( No |

Do all prisoners have 24-hour access to an operable toilet?

( Yes ( No

Do all prisoners have 24-hour access to a washbasin with hot and cold running water?

( Yes ( No

**Physical Facility and Equipment**

Is the facility kept clean and in good repair?

( Yes ( No

Is all facility equipment in proper working order?

( Yes ( No

Is there any evidence or sign of mold?

( Yes ( No

Is there any evidence or sign of insects?

( Yes ( No

Is there any evidence or sign of rodents?

( Yes ( No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Does the facility have adequate environmental controls to provide for indoor prisoner living conditions with air temperatures maintained between 69 and 76 degrees?

◯ Yes ◯ No

## SERVICE AND PROGRAMS

### Classification, Review, and Housing

Does the facility have a procedure for prisoner classification, placement, and management?

◯ Yes ◯ No

Does the facility regularly review a prisoner's behavior or circumstances to determine housing placement?

◯ Yes ◯ No

Are all USMS prisoners clearly identified in the facility's classification system?

◯ Yes ◯ No

### Copay and Fees

Are prisoners charged a fee for haircuts?

◯ Yes ◯ No

If 'Yes', are all prisoners charged the same fee?

◯ Yes ◯ No

Are prisoners charged a fee for meals?

◯ Yes ◯ No

If 'Yes', are all prisoners charged the same fee?

◯ Yes ◯ No

Are prisoners charged a fee for medical co-pay?

◯ Yes ◯ No

If yes, are all prisoners charged the same fee?

◯ Yes ◯ No

### Religious Practices

Do prisoners have the opportunity to participate in the religious practice of their faith?

◯ Yes ◯ No

### Volunteer Work Assignments

Does the facility allow USMS prisoners to hold a job in the facility?

◯ Yes ◯ No

Does the facility ensure that un-sentenced USMS prisoners are not required to hold a job in the facility unless they volunteer to do so?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

Does the facility pay USMS prisoners for services provided during scheduled work hours?

◯ Yes ◯ No

Are USMS prisoners assigned to work outside of the secure perimeter of the facility?

◯ Yes ◯ No

Does the facility document all USMS prisoner work assignments?

◯ Yes ◯ No

**Prisoner Grievance Program**

Does the prisoner grievance protocol include at least one level of appeal?

◯ Yes ◯ No

Does the facility document responses and dispositions of prisoner grievances?

◯ Yes ◯ No

When does the facility respond to the prisoner grievances?

Months [ ] Days [ ]

**Juveniles**

Does the facility house juveniles? If 'No', move to next section.

◯ Yes ◯ No

Does the facility have procedures for housing juveniles?

◯ Yes ◯ No

Does the facility ensure the special diet, exercise, and education needs of juvenile prisoners are met?

◯ Yes ◯ No

Does the facility place prisoners under 21 who are charged as juveniles in restrictive housing?

◯ Yes ◯ No

Does the facility immediately report restrictive housing of USMS juvenile prisoners?

◯ Yes ◯ No

Does the facility ensure that voluntary and involuntary restrictive housing of prisoners under 21 who are charged as juveniles are removed from restrictive housing every 3 hours?

◯ Yes ◯ No

**Exercise and Out-of-Cell Opportunities**

Does the facility provide prisoners with opportunity for exercise and out-of-cell time?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Telephone Access**

Do prisoners have adequate access to telephones?

◯ Yes ◯ No

**Access to the Courts and Legal Materials**

Do prisoners have access to the courts?

◯ Yes ◯ No

Do prisoners have access to legal material/law library?

◯ Yes ◯ No

**Access to Legal Representation**

Do the prisoners have confidential access to counsel via telephone?

◯ Yes ◯ No

Do the prisoners have confidential access to counsel via written correspondence?

◯ Yes ◯ No

Do the prisoners have confidential access to counsel via visitation?

◯ Yes ◯ No

**Visitation**

Does the facility have a prisoner visitation program?

◯ Yes ◯ No

Does the prisoner visiting room have barriers to prevent contact visitation?

◯ Yes ◯ No

**Mail and Correspondence**

Can Prisoners send and receive mail?

◯ Yes ◯ No

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

## CONCLUSION

### Other Notes

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

**Additional Points of Contact**

Title

Name

Type of Contact

Phone Number

Extension

Email Address

Title

Name

Type of Contact

Phone Number

Extension

Email Address

Title

Name

Type of Contact

Phone Number

Extension

Email Address

**Detention Facility Review (DFR) Acknowledgment**

*I acknowledge that I have completed DFR training within the last 365 days and I have a current USM-222, Additional Duty Designation, designating me as a Detention Facility Reviewer.*

Detention Facility Reviewer

Title

Date

SDUSM

Title

Date

CDUSM/USM

Title

Date

NOTICE: This document is intended FOR OFFICIAL USE ONLY and may contain LAW ENFORCEMENT SENSITIVE OR CONFIDENTIAL information which is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of this document. Any Protected Health Information contained in this document is to be used only to aid in providing healthcare services to federal prisoners. Any other use is a violation of Federal HIPAA Law and/or the Privacy Act and will be reported as such.

# Declaration of Sheriff Engle

# Exhibit B

NEW YORK STATE | Homeland Security and Emergency Services

**ANDREW M. CUOMO**
Governor

**PATRICK A. MURPHY**
Commissioner

September 3, 2020

The Honorable Joseph Lightfoot
Chair, St. Lawrence County Board of Legislators
48 Court Street
Canton, NY 13617

Dear Mr. Lightfoot:

I am pleased to announce that St. Lawrence County has been awarded $400,092 under the FY2020 Operation Stonegarden (OPSG) Program. Funding for this grant is provided by the U.S. Department of Homeland Security (DHS) Federal Emergency Management Agency (FEMA).

OPSG funding is provided to enhance cooperation and coordination between Federal, State, local, and tribal law enforcement agencies in joint operations along the Canadian border. The performance period for this grant will be from September 1, 2020 through August 31, 2023.

Our Grants Unit will work with your designated County point of contact, Kelly Reed, to provide any additional assistance or answer any questions as needed. However, in order to provide these funds to you as quickly as possible, Ms. Reed should submit a revised FY2020 Operations Order as soon as possible to the Border Patrol Agent in Charge (PAIC) for your area, Tim Morgan, who will review and then forward the revised Operations Order through appropriate channels to DHS for approval. Upon receipt of the approved Operations Order, our office will prepare a contract with the responsible individuals.

If you have any questions, please feel free to contact myself at 518-242-5000, or my OPSG point of contact, Mr. Ryan Lamothe, at 518-242-5123.

Thank you for your support of this homeland security initiative and your cooperation in this important public safety endeavor.

Sincerely,

Patrick A. Murphy
Commissioner

NEW YORK STATE | Homeland Security and Emergency Services

**KATHY HOCHUL**
Governor

October 26, 2021

The Honorable William J. Sheridan
Chair, St. Lawrence County Board of Legislators
48 Court Street
Canton, NY 13617

Dear Mr. Sheridan:

I am pleased to announce that St. Lawrence County has been awarded $300,000 under the FY2021 Operation Stonegarden (OPSG) Program. Funding for this grant is provided by the U.S. Department of Homeland Security (DHS) Federal Emergency Management Agency (FEMA).

OPSG funding is provided to enhance cooperation and coordination between federal, State, local, and tribal law enforcement agencies in joint operations along the Canadian border. The performance period for this grant will be from September 1, 2021 through August 31, 2024.

Our Grants Unit will work with your designated county point of contact, Kelly Reed and/or Sean O'Brien, to provide any additional assistance or answer any questions as needed. However, in order to provide these funds to you as quickly as possible, Ms. Reed and/or Mr. O'Brien should submit a revised FY2021 Operations Order as soon as possible to the border Patrol Agent in Charge (PAIC) for your area, Tim Morgan, who will review and then forward the revised Operations Order through appropriate channels to DHS for approval. Upon receipt of the approved Operations Order, our office will prepare a contract with the responsible individuals.

If you have any questions, please feel free to contact myself at 518-242-5000, or my OPSG point of contact, Mr. Ryan Lamothe, at 518-242-5123.

Thank you for your support of this homeland security initiative and your cooperation in this important public safety endeavor.

Sincerely,

Terence O'Leary
Executive Deputy Commissioner

NEW YORK STATE | Homeland Security and Emergency Services

KATHY HOCHUL
Governor

JACKIE BRAY
Commissioner

September 28, 2022

The Honorable William J. Sheridan
Chair, St. Lawrence County Board of Legislators
48 Court Street
Canton, NY 13617

Dear Mr. Sheridan:

I am pleased to announce that St. Lawrence County has been awarded $300,000 under the FY2022 Operation Stonegarden (OPSG) Program. Funding for this grant is provided by the U.S. Department of Homeland Security (DHS) Federal Emergency Management Agency (FEMA).

OPSG funding is provided to enhance cooperation and coordination between federal, State, local, and tribal law enforcement agencies in joint operations along the Canadian border. The performance period for this grant will be from September 1, 2022, through August 31, 2025.

Our Grants Unit will work with your designated county point of contact, Kelly Reed/Sean O'Brien, to provide any additional assistance or answer any questions as needed. However, in order to provide these funds to you as quickly as possible, either Kelly Reed or Sean O'Brien should submit a revised FY2022 Operations Order as soon as possible to the border Patrol Agent in Charge (PAIC) for your area, Tim Morgan, who will review and then forward the revised Operations Order through appropriate channels to DHS for approval. Upon receipt of the approved Operations Order, our office will prepare a contract with the responsible individuals.

If you have any questions, please feel free to contact myself at 518-242-5000, or my OPSG point of contact, Mr. Ryan Lamothe, at 518-242-5123.

Thank you for your support of this homeland security initiative and your cooperation in this important public safety endeavor.

Sincerely,

Jacqueline Bray

Jackie Bray
Commissioner

NEW YORK STATE | Homeland Security and Emergency Services

**KATHY HOCHUL**
Governor

**JACKIE BRAY**
Commissioner

September 14, 2023

The Honorable David Forsythe
Chair, St. Lawrence County Board of Legislators
48 Court Street
Canton, NY 13617

Dear Mr. Forsythe:

I am pleased to announce that St. Lawrence County has been awarded $300,000 under the FY2023 Operation Stonegarden (OPSG) Program. Funding for this grant is provided by the U.S. Department of Homeland Security (DHS) Federal Emergency Management Agency (FEMA).

OPSG funding is provided to enhance cooperation and coordination between federal, State, local, and tribal law enforcement agencies in joint operations along the Canadian border. The performance period for this grant will be from September 1, 2023, through August 31, 2026.

Our Grants Unit will work with your designated county point of contact, Kelly Reed and/or Sean O'Brien, to provide any additional assistance or answer any questions as needed. However, to provide these funds to you as quickly as possible, Kelly Reed and/or Sean O'Brien should submit a revised FY2023 Operations Order as soon as possible to the border Patrol Agent in Charge (PAIC) for your area, Tim Morgan, who will review and then forward the revised Operations Order through appropriate channels to DHS for approval. Upon receipt of the approved Operations Order, our office will prepare a contract with the responsible individuals.

If you have any questions, please feel free to contact me at 518-242-5000, or the Grants Program Administration (GPA) Director, Eric Abramson, at 518-402-2123.

Thank you for your support of this homeland security initiative and your cooperation in this important public safety endeavor.

Sincerely,

Jacqueline Bray

Jackie Bray
Commissioner

NEW YORK STATE | Homeland Security and Emergency Services

KATHY HOCHUL
Governor

JACKIE BRAY
Commissioner

November 1, 2024

The Honorable David Forsythe
Chair, St. Lawrence County Board of Legislators
48 Court Street
Canton, NY 13617

Dear Mr. Forsythe:

I am pleased to announce that St. Lawrence County has been awarded $290,000 under the FY2024 Operation Stonegarden (OPSG) Program. Funding for this grant is provided by the U.S. Department of Homeland Security (DHS) Federal Emergency Management Agency (FEMA).

OPSG funding is provided to enhance cooperation and coordination between federal, State, local, and tribal law enforcement agencies in joint operations along the Canadian border. The performance period for this grant will be from September 1, 2024, through August 31, 2027.

Our Grants Program Administration Unit will work with your designated county point of contact, Kelly Reed, to provide any additional assistance or answer any questions as needed. However, to provide these funds to you as quickly as possible, Kelly Reed should submit a revised FY2024 Operations Order as soon as possible to the border Patrol Agent in Charge (PAIC) for your area, Brian Lorimor, who will review and then forward the revised Operations Order through appropriate channels to DHS for approval. Upon receipt of the approved Operations Order, our office will prepare a contract with the responsible individuals.

If you have any questions, please feel free to contact me at 518-242-5000, or the Grants Program Administration (GPA) Director, Eric Abramson, at 518-402-2123.

Thank you for your support of this homeland security initiative and your cooperation in this important public safety endeavor.

Sincerely,

Jacqueline Bray

Jackie Bray
Commissioner

# Declaration of Sheriff Engle

# Exhibit C

# Department of Justice (DOJ)

## Office of Justice Programs

Bureau of Justice Assistance

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | ST LAWRENCE COUNTY<br>48 CT ST |
| **City, State and Zip:** | CANTON, NY 13617 |
| **Recipient UEI:** | ECBEXYEC94B5 |
| **Project Title:** SLC Sheriff BJA FY20 SCAAP Application | **Award Number:** 15PBJA-20-RR-00462-SCAA |
| **Solicitation Title:** BJA FY 2020 State Criminal Alien Assistance Program<br><br>Program Requirements and Application Instructions | |
| **Federal Award Amount:** $9,544.00 | **Federal Award Date:** 6/16/22 |
| **Awarding Agency:**<br><br>**Funding Instrument Type:** | Office of Justice Programs<br>Bureau of Justice Assistance<br>Reimbursement |
| **Opportunity Category:** D<br>**Assistance Listing:**<br>16.606 - | |
| **Project Period Start Date:** 7/1/18 | **Project Period End Date:** 5/31/23 |
| **Budget Period Start Date:** 7/1/18 | **Budget Period End Date**: 5/31/23 |
| **Project Description:** | |

# Award Information

**Application Number**
GRANT13276629

**Funding Instrument Type:**
Reimbursement

**Award Number**
15PBJA-20-RR-00462-SCAA

**Supplement Number**
00

**Award Acceptance Date**
07/26/2022 11:16 AM EDT

| Assistance Listings Number | Assistance Listings Program Title |
| --- | --- |
| 16.606 | |

| Statutory Authority |
| --- |
| The FY 2020 program is authorized by 8 U.S.C. § 1231(i) and Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, 133 Stat 2317, 240. See also 28 U.S.C. § 530C(a). |

## Current Authorized Representative

## Title of Authorized Representative

## Name of Authorized Representative
Sean O'Brien

## Solicitation Information

## Solicitation Title

2020 BJA FY 2020 State Criminal Alien Assistance Program Program Requirements and Application Instructions

## Project Title
SLC Sheriff BJA FY20 SCAAP Application

## Project Description

## Project Budget Summary

This award did not receive a budget review as indicated by the budget review selection made when publishing a solicitation.

# Department of Justice (DOJ)

**Office of Justice Programs**

Bureau of Justice Assistance

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | ST LAWRENCE COUNTY<br>48 CT ST |
| **City, State and Zip:** | CANTON, NY 13617 |
| **Recipient UEI:** | ECBEXYEC94B5 |
| **Project Title:** St. Lawrence County / State Criminal Alien Assistance Program (SCAAP) | **Award Number:** 15PBJA-21-RR-04926-SCAA |
| **Solicitation Title:** BJA FY 2021 State Criminal Alien Assistance Program Program Requirements and Application Instructions | |
| **Federal Award Amount:** $4,025.00 | **Federal Award Date:** 11/2/22 |
| **Awarding Agency:** | Office of Justice Programs<br>Bureau of Justice Assistance |
| **Funding Instrument Type:** | Reimbursement |
| **Opportunity Category:** M<br>**Assistance Listing:**<br>16.606 - State Criminal Alien Assistance Program | |
| **Project Period Start Date:** 7/1/19 | **Project Period End Date:** 6/30/23 |
| **Budget Period Start Date:** 7/1/19 | **Budget Period End Date**: 6/30/23 |
| **Project Description:** | |

## Award Information

**Application Number**
GRANT13575017

**Funding Instrument Type:**
Reimbursement

**Award Number**
15PBJA-21-RR-04926-SCAA

**Supplement Number**
00

**Award Acceptance Date**
12/13/2022 01:35 PM EST

| Assistance Listings Number | Assistance Listings Program Title |
|---|---|
| 16.606 | State Criminal Alien Assistance Program |

| Statutory Authority |
|---|
| 8 U.S.C. § 1231(i) and Department of Justice Appropriations Act, 2021, Pub. L. 116-260, 134 Stat 1182, 1258 |

## Current Authorized Representative

## Title of Authorized Representative

## Name of Authorized Representative
Sean O'Brien

## Solicitation Information

## Solicitation Title

2021 BJA FY 2021 State Criminal Alien Assistance Program Program Requirements and Application Instructions

## Project Title
St. Lawrence County / State Criminal Alien Assistance Program (SCAAP)

## Project Description

## Project Budget Summary

This award did not receive a budget review as indicated by the budget review selection made when publishing a solicitation.

# Department of Justice (DOJ)

## Office of Justice Programs

Bureau of Justice Assistance

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | ST LAWRENCE COUNTY<br>48 CT ST |
| **City, State and Zip:** | CANTON, NY 13617 |
| **Recipient UEI:** | ECBEXYEC94B5 |
| **Project Title:** St. Lawrence County / State Criminal Alien Assistance Program (SCAAP) | **Award Number:** 15PBJA-22-RR-05081-SCAA |
| **Solicitation Title:** BJA FY 2022 State Criminal Alien Assistance Program | |
| **Federal Award Amount:** $10,542.00 | **Federal Award Date:** 8/30/23 |
| **Awarding Agency:** | Office of Justice Programs<br>Bureau of Justice Assistance |
| **Funding Instrument Type:** | Reimbursement |
| **Opportunity Category:** O<br>**Assistance Listing:**<br>16.606 - State Criminal Alien Assistance Program | |
| **Project Period Start Date:** 7/1/20 | **Project Period End Date:** 9/30/24 |
| **Budget Period Start Date:** 7/1/20 | **Budget Period End Date**: 9/30/24 |
| **Project Description:** | |

# Award Information

**Application Number**
GRANT13770345

**Funding Instrument Type:**
Reimbursement

**Award Number**
15PBJA-22-RR-05081-SCAA

**Supplement Number**
00

**Award Acceptance Date**
10/03/2023 09:49 AM EDT

| Assistance Listings Number | Assistance Listings Program Title |
| --- | --- |
| 16.606 | State Criminal Alien Assistance Program |

| Statutory Authority |
| --- |
| 8 U.S.C. 1231(i); Department of Justice Appropriations Act, 2022 (Pub. L. No. 117-103, 136 Stat. 49, 125) |

## Current Authorized Representative

## Title of Authorized Representative

## Name of Authorized Representative
Peggy Harper

## Solicitation Information

## Solicitation Title

2022 BJA FY 2022 State Criminal Alien Assistance Program

## Project Title
St. Lawrence County / State Criminal Alien Assistance Program (SCAAP)

## Project Description

## Project Budget Summary

This award did not receive a budget review as indicated by the budget review selection made when publishing a solicitation.

# Department of Justice (DOJ)

**Office of Justice Programs**

Bureau of Justice Assistance

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | ST. LAWRENCE COUNTY<br>48 COURT ST |
| **City, State and Zip:** | CANTON, NY 13617 |
| **Recipient UEI:** | ECBEXYEC94B5 |
| **Project Title:** St. Lawrence County/State Criminal Alien Assistance Program (SCAAP) FY2023 | **Award Number:** 15PBJA-23-RR-05834-SCAA |
| **Solicitation Title:** BJA FY 23 State Criminal Alien Assistance Program | |
| **Federal Award Amount:** $6,882.00 | **Federal Award Date:** 11/21/23 |
| **Awarding Agency:** | Office of Justice Programs<br>Bureau of Justice Assistance |
| **Funding Instrument Type:** | Reimbursement |
| **Opportunity Category:** O<br>**Assistance Listing:**<br>16.606 - State Criminal Alien Assistance Program | |
| **Project Period Start Date:** 7/1/21 | **Project Period End Date:** 12/31/24 |
| **Budget Period Start Date:** 7/1/21 | **Budget Period End Date**: 12/31/24 |
| **Project Description:** | |

## Award Information

**Application Number**
GRANT13843336

**Funding Instrument Type:**
Reimbursement

**Award Number**
15PBJA-23-RR-05834-SCAA

**Supplement Number**
00

**Award Acceptance Date**
12/06/2023 02:27 PM EST

| Assistance Listings Number | Assistance Listings Program Title |
|---|---|
| 16.606 | State Criminal Alien Assistance Program |

| Statutory Authority |
|---|
| 8 U.S.C. 1231(i); Department of Justice Appropriations Act, 2023 (Pub. L. No. 117-328), 136 Stat. 4459, 4535 |

## Current Authorized Representative

## Title of Authorized Representative

## Name of Authorized Representative
Peggy Harper

## Solicitation Information

## Solicitation Title

2023 BJA FY 23 State Criminal Alien Assistance Program

## Project Title
St. Lawrence County/State Criminal Alien Assistance Program (SCAAP) FY2023

## Project Description

## Project Budget Summary

This award did not receive a budget review as indicated by the budget review selection made when publishing a solicitation.

# Department of Justice (DOJ)

## Office of Justice Programs

Bureau of Justice Assistance

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | ST. LAWRENCE COUNTY<br>48 COURT ST |
| **City, State and Zip:** | CANTON, NY 13617 |
| **Recipient UEI:** | ECBEXYEC94B5 |
| **Project Title:** St. Lawrence County / State Criminal Alien Assistance Program (SCAAP) FY24 | **Award Number:** 15PBJA-24-RR-05837-SCAA |
| **Solicitation Title:** BJA FY24 State Criminal Alien Assistance Program | |
| **Federal Award Amount:** $11,407.00 | **Federal Award Date:** 1/16/25 |
| **Awarding Agency:** | Office of Justice Programs<br>Bureau of Justice Assistance |
| **Funding Instrument Type:** | Reimbursement |
| **Opportunity Category:** O<br>**Assistance Listing:**<br>16.606 - State Criminal Alien Assistance Program | |
| **Project Period Start Date:** 7/1/22 | **Project Period End Date:** 12/31/25 |
| **Budget Period Start Date:** 7/1/22 | **Budget Period End Date**: 12/31/25 |
| **Project Description:** | |

Award Information

**Application Number**
GRANT14190995

**Funding Instrument Type:**
Reimbursement

**Award Number**
15PBJA-24-RR-05837-SCAA

**Supplement Number**
00

**Award Acceptance Date**
03/06/2025 08:09 AM EST

| Assistance Listings Number | Assistance Listings Program Title |
|---|---|
| 16.606 | State Criminal Alien Assistance Program |

| Statutory Authority |
|---|
| 8 U.S.C. 1231(i) and 1365. Department of Justice Appropriations Act 2024 (Pub. L. No. 118-42, 138 Stat. 25, 147) |

## Current Authorized Representative

## Title of Authorized Representative

## Name of Authorized Representative
Peggy Harper

## Solicitation Information

## Solicitation Title

2024 BJA FY24 State Criminal Alien Assistance Program

## Project Title
St. Lawrence County / State Criminal Alien Assistance Program (SCAAP) FY24

## Project Description

## Project Budget Summary

This award did not receive a budget review as indicated by the budget review selection made when publishing a solicitation.

# Declaration of Sheriff Engle

# Exhibit D

February 2, 2026

Operations Committee: 1-12-2026

RESOLUTION NO. 44-2026

**AUTHORIZING THE ST. LAWRENCE COUNTY SHERIFF TO ENTER INTO A SECTION 287(G) MEMORANDUM OF AGREEMENT JAIL ENFORCEMENT MODEL WITH U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE)**

By Ms. Curran, Chair, Operations Committee

**WHEREAS,** Section 287(g) of the Immigration and Nationality Act authorizes the U.S. Secretary of Homeland Security to enter into written agreements with state and local law enforcement agencies to delegate federal immigration authority to trained local officers, and

**WHEREAS,** the St. Lawrence County Sheriff's Office intends to enter a 287(g) Memorandum of Agreement (MOA) with U.S. Immigration and Customs Enforcement (ICE) to identify and process non-citizens booked into the County Correctional Facility for state or local offenses, and

**WHEREAS,** the selected 287(g) Jail Enforcement Model necessitates training and certification for Sheriff's Office personnel, and

**WHEREAS,** under the Jail Enforcement Model, U.S. Immigration and Customs Enforcement (ICE), will train approved Sheriff's Office personnel assigned to the Correctional Facility to identify criminal aliens and immigration violators in custody and place them into immigration proceedings, and

**WHEREAS,** ICE has provided to the County certain terms they have found agreeable to have the Sheriff's/ICE trained employees provide certain functions after said training, and

**WHEREAS,** the Sheriff shall select certain members of his department with the proper background to be trained in the manner necessary to operate in the limited functions asked to be performed by ICE, and

**WHEREAS,** the training to be provided to select Sheriff personnel will greatly enhance their ability to perform their jobs under ICE supervision, as well as conduct themselves as a member of the Sheriff's Office, and

**WHEREAS,** the Board of Legislators has reviewed this proposal and finds it to be in the County's interest for public safety,

**NOW, THEREFORE, BE IT RESOLVED** that the Board of Legislators authorizes the St. Lawrence County Sheriff to enter into a Section 287(g) Memorandum of Agreement Jail Enforcement Model with U.S. Immigration and Customs Enforcement (ICE), and to revisit in a year to assess, and

**BE IT FURTHER RESOLVED** that the Sheriff is authorized to sign all documents for the execution and implementation of the agreement upon review and approval of the form and contents thereof by the County Attorney, and

**BE IT FURTHER RESOLVED** that the Sheriff shall report regularly to the Board of Legislators on the operation of the Program.

**STATE OF NEW YORK )**
**) ss:**
**COUNTY OF ST. LAWRENCE )**

I, Rebekah K. Zuhlsdorf, Deputy Clerk of the St. Lawrence County Board of Legislators, **DO HEREBY CERTIFY** that I have compared this Resolution No. 44-2026 Entitled "Authorizing the St. Lawrence County Sheriff to Enter into a Section 287(G) Memorandum of Agreement Jail Enforcement Model with U.S. Immigration and Customs Enforcement (ICE)", adopted February 2, 2026, with the original record in this office and that the same is a correct transcript thereof and of the whole of said original record.

Rebekah K. Zuhlsdorf

Rebekah K. Zuhlsdorf, Deputy Clerk
St. Lawrence County Board of Legislators
February 3, 2026