**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
**(ALBANY DIVISION)**

| | |
|---|---|
| KYLE BOURGAULT, in his official capacity as Sheriff of Rensselaer County, New York, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KATHY HOCHUL, in her official capacity as Governor of the State of New York, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-1637 (MAD/ML)<br><br>Related Cases:<br>No. 1:26-cv-1360 (MAD/ML);<br>No. 1:26-cv-1281 (MAD/ML) |

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF A TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION

Mateo Forero-Norena (Bar No. 707682)
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
Fax: (202) 387-3447
mforero@fairus.org

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

ARGUMENT ........................................................................................................................1

I. Plaintiffs have capacity to seek prospective relief on their federal claims. .................1

II. Defendants' Contracts Clause arguments do not defeat likelihood of success. ...........4

a. The agreements are enforceable contracts, and impairment is substantial.............5

b. The State's asserted purpose for enacting § 170-K does not end the inquiry. .......6

c. The State is not entitled to deference on its asserted means. ................................7

III. Plaintiffs' additional claims also support preliminary relief. .....................................9

IV. A narrow injunction preserving the existing agreements is warranted. .....................10

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Agudath Israel of America v. Cuomo*, 983 F.3d 620 (2d Cir. 2020) ........ 10

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234 (1978) ........ 7

*Buffalo Teachers Federation v. Tobe*, 464 F.3d 362 (2d Cir. 2006) ........ 7, 8

*City of New York v. State*, 86 N.Y.2d 286 (1995) ........ 2, 3, 4

*Clarke v. Town of Newburgh*, 45 N.Y.3d 428 (2025) ........ 4

*Colon de Mejias v. Lamont*, 963 F.3d 196 (2d Cir. 2020) ........ 6

*Connecticut State Police Union v. Rovella*, 36 F.4th 54 (2d Cir. 2022) ........ 7

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) ........ 9

*Enstrom v. City of New York*, 258 A.D. 672 (2d Dept. 1940) ........ 3

*Ex parte Young*, 209 U.S. 123 (1908) ........ 4

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ........ 10

*Frank v. United States*, 78 F.3d 815 (2d Cir. 1996) ........ 3

*Hanley v. New York*, 250 A.D. 552 (1st Dept. 1937) ........ 3

*Holt v. Feigenbaum*, 52 N.Y.2d 291 (1981) ........ 6

*Howlett v. Rose*, 496 U.S. 356 (1990) ........ 2

*In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367 (2d Cir. 2005) ........ 4

*Mack v. United States*, 856 F. Supp. 1372 (D. Ariz. 1994) ........ 3

*Melendez v. City of New York*, 16 F.4th 992 (2d Cir. 2021) ........ 5

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32 (2d Cir. 2018) ........ 10

*New York v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015) ........ 10

*People ex rel. Wogan v. Rafferty*, 208 N.Y. 451 (1913) ........ 3

*People v. Viviani*, 36 N.Y.3d 564 (2021)...................................................................... 3

*Printz v. United States*, 854 F. Supp. 1503 (D. Mont. 1994)................................................ 3

*Sullivan v. Nassau County Interim Finance Authority*, 959 F.3d 54 (2d Cir. 2020) ............... 7

*Sveen v. Melin*, 584 U.S. 811 (2018) ...................................................................................... 5

*United States Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977) ................................ 8

*United States v. New York*, 2026 WL 2225423 (N.D.N.Y. Aug. 3, 2026) .........................*passim*

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002) .................................. 4

*Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458 (1982)............................................................ 6

*Williams v. Mayor of Baltimore*, 289 U.S. 36 (1933) ............................................................ 2

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)................................. 10

**Constitutional Provisions**

U.S. Const. art. I, § 10, cl. 1.................................................................................................. 2

N.Y. Const. art. XIII, § 13 ...................................................................................................... 3

**Statutes**

8 U.S.C. § 1357(g) .................................................................................................................. 6

N.Y. Exec. Law § 63-E..........................................................................................................9, 10

N.Y. Exec. Law § 170-K .....................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 17(b) ............................................................................................................... 2

## INTRODUCTION

Defendants' opposition to preliminary relief has two themes. First, Sheriffs may not sue the State at all. Second, this Court already rejected a Contracts Clause challenge to Executive Law § 170-K on August 3, so it should do so again. These points are unavailing. Capacity rules designed to stop political subdivisions from fighting Albany over state-created schemes do not bar independently elected officers from seeking prospective relief against the Governor and the Attorney General on a federal constitutional claim. Meanwhile, the August 3 Order in *United States v. New York*, No. 1:26-cv-1360, did not foreclose Plaintiffs' Contracts Clause claim. It identified what was then missing: a record that § 170-K is an unreasonable or unnecessary means of serving the purpose the State asserts. That record is now before the Court, including a sister-court decision enjoining a similar Virginia statute. Defendants do not confront these developments. Plaintiffs are likely to succeed on their Contracts Clause claim. The order they seek would prevent irreparable harm and preserve the *status quo* prior to August 25. Preliminary relief is warranted.

## ARGUMENT

### I. Plaintiffs have capacity to seek prospective relief on their federal claims.

Defendants' lead argument is that Rule 17(b) incorporates *City of New York v. State*, 86 N.Y.2d 286 (1995), and that Plaintiffs therefore lack capacity to challenge § 170-K. *See* Defendants' Memorandum of Law in Response to the Order to Show Cause ("Defs' Br.") (ECF Doc. 13) at 5–14. That framing is inapt. Plaintiffs are not municipal corporations asking this Court to referee a fight with Albany over a state-created scheme. They are independently elected constitutional officers asking the Court to stop enforcement of a statute that impairs their existing agreements with the United States. Rule 17(b) points to state law as providing the rule for certain parties' capacity to bring certain actions. It does not enlarge *City of New York* into a blanket ban

on available federal remedies. *Cf. Howlett v. Rose*, 496 U.S. 356, 367–75 (1990) (holding that a State may not use a state-law immunity that federal law does not recognize to defeat a claim).

*City of New York* establishes a rule about intra-state political fights. Municipalities and their officers lack capacity to mount constitutional challenges to State legislation because those entities are "subdivisions of the State, created by the State for the convenient carrying out of the State's governmental powers." 86 N.Y.2d at 289–90. The plaintiffs there were the City of New York, its Board of Education, the Mayor, and the Chancellor. They were asking a court to decide how the Legislature funds a state-created school system. That posture mirrors *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933), on which *City of New York* rests. In *Williams*, the U.S. Supreme Court held that a municipality "has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." That case involved an Equal Protection challenge by two cities to a state tax exemption.

Those authorities do not apply here. Plaintiffs are not municipalities seeking a re-allocation of state resources. They are independently elected officers under Article XIII, § 13 of the New York Constitution. New York courts have long treated the Sheriff as distinct from the county that elects it. *See Hanley v. New York*, 250 A.D. 552, 553 (1st Dept. 1937); *Enstrom v. City of New York*, 258 A.D. 672, 676 (2d Dept. 1940). Defendants cannot place the office of Sheriff in every box at once. They call Plaintiffs "State officers empowered solely by State law," "local government entit[ies] created by State law," and not representatives of their counties for Home Rule purposes. Defs' Br. at 5, 10 n.8. If the office is a constitutional office, it is not a "creature of the Legislature" in the *City of New York* sense. If it is not the county, it is not the municipal plaintiff in *City of New York*. In any event, the Contracts Clause is not a "privilege or immunity" of a municipality against its creator. It is a prohibition on the State itself. U.S. Const.

art. I, § 10, cl. 1. *City of New York* does not hold that when the State voids a contract and then sues to compel the voiding, the affected party may not ask a court to intervene.

Of course, it is true that the Legislature may regulate the duties of constitutional officers. But it may not "transfer any essential function of the office to a different officer" or "depriv[e] them of a substantial attribute of the office." *People v. Viviani*, 36 N.Y.3d 564, 578 (2021); *People ex rel. Wogan v. Rafferty*, 208 N.Y. 451, 456 (1913). Defendants cite *Viviani* and *Rafferty* to show that status as a constitutional officer confers no capacity. Defs' Br. at 12–14. But those cases cut the other way: an officer whose office the Constitution creates and protects is not a disposable subdivision that exists only at legislative pleasure. Public officials have long been recognized to have capacity to sue commensurate with their official duties, without express statutory authorization. *Frank v. United States*, 78 F.3d 815, 825 (2d Cir. 1996); *Printz v. United States*, 854 F. Supp. 1503, 1507–08 (D. Mont. 1994); *Mack v. United States*, 856 F. Supp. 1372, 1378 (D. Ariz. 1994). Although *Frank*, *Printz*, and *Mack* ran against the United States rather than the State, they still rebut the proposition Defendants advance: an independently elected sheriff may indeed sue in his official capacity to protect the duties of his office.

Even if *City of New York* controlled, the "dilemma exception" would apply. Capacity exists where compliance with a statute would force the plaintiff "to violate a constitutional proscription." *City of New York*, 86 N.Y.2d at 292. Defendants argue that exercising a termination clause is not itself unconstitutional. Defs' Br. at 11–12. But that is not the compliance § 170-K requires. The statute declares existing 287(g) agreements "void and unenforceable" and commands that they be terminated. N.Y. Exec. Law § 170-K(7). The Attorney General has already sued Sheriff Bourgault for mandamus to force that termination. *See* Second Declaration of Sheriff Kyle Bourgault ("2d Bourgault Decl.") (ECF Doc. 12-1) ¶¶ 3–6, 14 & Ex. A. Compliance on this record is the

compelled performance of a statutory command that is itself unconstitutional. *Clarke v. Town of Newburgh*, 45 N.Y.3d 428, 438 (2025), leaves open "a municipality's ability to bring an as-applied challenge, showing that it will be forced to take a course of action that is unconstitutional." That is precisely what is at play here.

Separately, the Governor and the Attorney General are proper defendants under *Ex parte Young*, 209 U.S. 123 (1908). A plaintiff may sue a state officer for prospective relief against an ongoing violation of federal law when the officer has some connection with enforcing the violation. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005). Plaintiffs allege that § 170-K violates the Contracts Clause, and seek an injunction against ongoing enforcement. OIT's letters and demands, the state action against Sheriff Bourgault, and the Governor's statement that "[c]ompliance … is not optional" are that enforcement. *See* Plaintiffs' Memorandum of Law in Support of the Order to Show Cause ("Pfs' Br.") (ECF Doc. 5-2) at 7–8; 2d Bourgault Decl. ¶¶ 3–8 & Exs. A–B. The *Ex parte Young* doctrine was designed to remedy this scenario.

**II. Defendants' Contracts Clause arguments do not defeat likelihood of success.**

Defendants' merits argument is that this Court already rejected a Contracts Clause challenge to § 170-K on August 3, and that nothing in this record warrants a different result. Defs' Br. at 14–21. That misreads the August 3 Order. The Court treated substantial impairment as uncontested, accepted the Governor's Program Bill Memorandum as a purpose document, and deferred on means because the United States had not supplied "compelling evidence" that the statute was unreasonable or unnecessary. *United States v. New York*, No. 1:26-cv-1360, 2026 WL 2225423, at *20 n.10, *21–23 (N.D.N.Y. Aug. 3, 2026). The record the Court said was missing is now here: existing written agreements, OIT's enforcement campaign, forced termination notices,

a pending mandamus action, and a sister-court decision holding that a less intrusive statute impaired existing 287(g) agreements. *See* Memorandum Opinion, *United States v. Virginia*, No. 3:26-cv-00545 (E.D. Va. Sept. 3, 2026) ("*Virginia*") (ECF Doc. 11-2).

a. <u>The agreements are enforceable contracts, and impairment is substantial.</u>

A substantial impairment exists when a state law undermines the contractual bargain, interferes with reasonable expectations, and prevents the party from safeguarding or reinstating its rights. *Sveen v. Melin*, 584 U.S. 811, 819 (2018); *Melendez v. City of New York*, 16 F.4th 992, 1035 (2d Cir. 2021). In its August 3 Order, the Court assumed that step because New York did not contest it. 2026 WL 2225423, at *20 n.10. Defendants contest it now. Defs' Br. at 19–21.

The 287(g) and federal housing agreements Plaintiffs currently hold are written, signed, and being actively performed. Sheriff Bourgault's 287(g) agreement has operated since 2018. His 2024 U.S. Marshals agreement ("USMS IGA") generated about $3.89 million in 2025 and lists U.S. Immigration and Customs Enforcement ("ICE") as an authorized user. Bourgault Decl. ¶¶ 20–29 & Exs. A–B. Sheriffs Butler, Akshar, Engle, and Hood also hold live USMS IGAs with the same ICE-user term. Butler Decl. ¶ 12 & Ex. B; Akshar Decl. ¶¶ 9–10 & Ex. A; Engle Decl. ¶¶ 16–18 & Ex. A; Hood Decl. ¶¶ 12–13 & Exs. A–B. Those instruments contain the classic marks of a contract: mutual promises, defined performance, and an agreed method of termination.

Defendants argue that 287(g) agreements lack consideration under *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 464 (1982), because 8 U.S.C. § 1357(g)(1) requires the locality to bear the cost. Defs' Br. at 19–20. Mutual promises are consideration. *Holt v. Feigenbaum*, 52 N.Y.2d 291, 299 (1981). The United States supplies training, credentials, and authority to perform designated federal functions; the sheriff supplies officers and jail access. That is a bargain, whether or not cash moves from ICE to the county. In any event, Plaintiffs' housing agreements exchange per-

diem payments for bed space. Defendants do not deny that those payments are consideration. They say only that ICE use is a "narrow portion" of the USMS bargain. Defs' Br. at 20. But Section 170-K is blind to that characterization. It commands that the ICE-authorized use be terminated and treats continued performance as unlawful. N.Y. Exec. Law § 170-K(2)(a)(ii), (7). Destroying an authorized use the parties wrote into the agreement is an impairment of that agreement. *Colon de Mejias v. Lamont*, 963 F.3d 196, 202–03 (2d Cir. 2020), does not hold otherwise. Whether a contract exists is a question of state law, and under New York law, Plaintiffs' 287(g) and federal housing agreements are contracts. That is different from the ratepayers in *Colon de Mejias*, who were trying to treat a statutory energy fund as a private bargain.

b. <u>The State's asserted purpose for enacting § 170-K does not end the inquiry.</u>

Defendants treat this Court's August 3 purpose finding as the end of the Contracts Clause analysis. Defs' Br. at 14–16. It is not. The August 3 Order accepted the Governor's Program Bill Memorandum as contemporaneous evidence of a public-safety and resource-conservation purpose. 2026 WL 2225423, at *21. This record shows the State's asserted justification is opposition to federal immigration enforcement, which is not a legitimate Contracts Clause purpose.

The Program Bill Memorandum does not describe a study of jail crowding or a staffing shortfall that would justify § 170-K's enactment. Instead, it says that "[t]he current federal administration has enforced federal immigration laws with unprecedented aggression and heavy-handed tactics without concern for individual rights, community safety, and the rule of law." Affidavit of Arastu Chaudhury ("Chaudhury Aff.") Ex. A at 2 (ECF Doc. 14-1). It concludes that using local officers "in furtherance of the federal administration's immigration agenda draws critical public safety resources away from essential law enforcement functions." *Id.* That is contemporaneous evidence of a purpose that a sister court has now held invalid. When Virginia's

287(g) ban was passed, the state's "articulated public purpose was to oppose the methods being used by federal authorities to enforce the federal immigration law." *Virginia* at 31. "It is rather obvious that Virginia could not satisfy step two of the contract impairment analysis by asserting that it was acting to oppose federal enforcement of federal immigration law." *Id.*

This Court cited *Connecticut State Police Union v. Rovella*, 36 F.4th 54, 66–67 (2d Cir. 2022), in its August 3 Order for the proposition that addressing a "broad societal goal" is a legitimate purpose. 2026 WL 2225423, at *21. The goal in *Rovella* was reforming police-misconduct investigations. The goal in the Program Bill Memorandum is stopping local officers from assisting "the federal administration's immigration agenda." Chaudhury Aff. Ex. A at 2. Those two goals are not comparable. Indeed, the way the State has aggressively pursued compliance with § 170-K matches the purpose expressed in the Program Bill Memorandum. *See* Pfs' Br. at 7–8; 2d Bourgault Decl. ¶¶ 3–10 & Exs. A–B. That does not reflect a general welfare program; it is enforcement trained on a narrow class. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 248–50 (1978).

c. <u>The State is not entitled to deference on its asserted means.</u>

Even if the Court adheres to its August 3 purpose finding, the State is not entitled to deference on the means it chose to achieve that purpose. This Court previously deferred on reasonableness because the United States had not put on "compelling evidence" that § 170-K was an unreasonable or unnecessary means of serving the asserted purpose. 2026 WL 2225423, at *22–23. Defendants say that ends the matter. Defs' Br. at 17–19. But ordinary deference applies only if the record does not show "some indicia" that the impairment was driven by self-interest. *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 369 (2d Cir. 2006); *Sullivan v. Nassau Cnty. Interim Fin. Auth.*, 959 F.3d 54, 65–66 (2d Cir. 2020).

That showing is met here by how the statute has been enforced. Pfs' Br. at 16–17. Section 170-K aims at a discrete class: the independently elected sheriffs who kept immigration partnerships with the United States. It leaves untouched identical housing and task-force arrangements with other federal agencies. OIT's letters and investigative demands were tied to § 170-K's statutory void date, and two Plaintiffs sent termination notices to ICE under protest as a result. Pfs' Br. at 7–8. The Attorney General then sued the sheriff who did not terminate his 287(g) agreement. 2d Bourgault Decl. ¶¶ 3–10 & Ex. A. The State has now also made the same agreement a bar to public-safety grant funding. *Id.* ¶¶ 11–17 & Exs. C–D. That is not the State "genuinely acting for the public good." *Buffalo Teachers*, 464 F.3d at 370. It is the State using a new enforcement bureau, a mandamus action, and public funds to compel a result from Plaintiffs.

Less deference therefore applies here. Under that standard, it must be shown that the State did not "consider impairing the … contracts on par with other policy alternatives," did not "impose a drastic impairment when an evident and more moderate course would serve its purpose equally well," and did not "act unreasonably in light of the surrounding circumstances." *Buffalo Teachers*, 464 F.3d at 371 (quoting *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 30–31 (1977)).

The means chosen here are the most extreme available. Section 170-K declares existing 287(g) agreements "void and unenforceable" and commands that they be terminated. N.Y. Exec. Law § 170-K(7). It commands housing counterparties to exercise termination clauses on a fixed clock. *Id.* § 170-K(2)(a)(ii). The State also creates an office with broad enforcement power and authorizes the Attorney General to sue. *Id.* § 63-E. Virginia's statute at least offered a rewrite path before an agreement was deemed void. New York offers none. A sister court held that even the rewrite-or-void device was not a reasonable adjustment of existing 287(g) rights because "all a State would ever have to do to evade the proscription of the Contracts Clause is to pass a law that

says 'change the contract or it's void.'". *Virginia* at 30. That warning applies with more force to a law that skips the rewrite and proceeds directly to voiding, mandamus, and a funding cutoff.

Other moderate courses were ignored. The 287(g) agreements already let a participating sheriff end the relationship on notice. If the State's goal is that New York localities stop performing 287(g) functions, allowing the exercise of that clause is a more moderate course. Instead, the State declared the agreements void and sued to compel termination. The Attorney General's own guidance offers another moderate course: model local laws and policies that a county can adopt if it wishes to limit participation in civil immigration enforcement. Chaudhury Aff. Ex. B at 1; Ex. C. The Legislature chose blanket nullification over any of these less restrictive means.

The State's chosen course is also unreasonable in light of the surrounding circumstances. The purpose the State asserts is public safety and the conservation of local resources. The agreements the statute extinguishes are the instruments the Sheriffs use to achieve both. Sheriff Bourgault's 287(g) agreement has produced nine turnovers to federal authorities since 2018, and his USMS IGA has generated millions of dollars in reimbursements for Rensselaer County. Bourgault Decl. ¶¶ 26, 65–70 & Ex. B. Sheriff Hood honored seven ICE detainers, including for robbery, weapons offenses, and rape. Hood Decl. ¶ 17. A means that destroys the partnerships producing those outcomes, while leaving every other federal agreement in the same jails untouched, is not "of a character appropriate to the public purpose justifying [the] adoption." *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412 (1983). The court in *Virginia* held as much, noting that the state's public-safety explanation was "conclusorily asserted and unexplained." *Virginia* at 34. Defendants do the same thing. Defs' Br. at 17–19.

**III. Plaintiffs' additional claims also support preliminary relief.**

Plaintiffs' Contracts Clause claim is sufficient to support the relief sought, but Plaintiffs do

not abandon their reverse commandeering or state constitutional claims. *See* Pfs' Br. at 17–22.

**IV. A narrow injunction preserving the existing agreements is warranted.**

*Winter v. NRDC* requires Plaintiffs to show a likelihood of success on the merits, irreparable harm, favorable equities, and the public interest. 555 U.S. 7, 20 (2008). Defendants demand more because § 170-K has taken effect. They say any injunction would alter the *status quo* and must rest on a "clear" or "substantial" likelihood of success. Defs' Br. at 23 (citing *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). But that standard applies only if the order would change "the last actual, peaceable uncontested status which preceded the pending controversy." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). The last peaceable status is the agreements Plaintiffs had before § 170-K declared them void. *NASL* does not let a State raise the standard of review by running out a void date it created.

The harms now in motion cannot be undone after trial. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Existing 287(g) agreements have been declared void. Two Plaintiffs sent termination notices under protest. OIT has sued Sheriff Bourgault for mandamus, and the State has made the same agreement a bar to public-safety funding. Housing IGAs with ICE riders remain on a statutory clock. Lost per-diem revenue is only part of the injury. Trained 287(g) capacity and live federal partnerships are not items a later judgment can reconstruct. Meanwhile, the State is not harmed by an order that freezes a law likely to be found invalid. *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020); *Virginia* at 49.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask the Court to enjoin Defendants from enforcing Executive Law §§ 170-K and 63-E against their existing 287(g) and housing agreements.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Mateo Forero-Norena*
Mateo Forero-Norena (Bar No. 707682)
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
Fax: (202) 387-3447
mforero@fairus.org

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**
**(ALBANY DIVISION)**

| | |
|---|---|
| KYLE BOURGAULT, in his official capacity as Sheriff of Rensselaer County, New York, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KATHY HOCHUL, in her official capacity as Governor of the State of New York, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-1637 (MAD/ML)<br><br>Related Cases:<br>No. 1:26-cv-1360 (MAD/ML);<br>No. 1:26-cv-1281 (MAD/ML) |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026, I electronically filed the foregoing Plaintiffs' Reply Memorandum of Law in Further Support of a Temporary Restraining Order and Preliminary Injunction with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Mateo Forero-Norena*
Mateo Forero-Norena (Bar No. 707682)